OPINION OF THE COURT
CAIRNS, Senior Judge:
A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of willfully disobeying noncommissioned officers’ (NCO) orders (two specifications), violating a lawful general regulation pertaining to the operation of motor vehicles (two specifications), drunk driving, and drunk and reckless driving causing injuries, in violation of Articles 91, 92, and 111, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 892, and 911 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for thirty-seven months, forfeiture of $450.00 pay per month for thirty-seven months, and reduction to Private E1. The convening authority approved the adjudged sentence.
This case is before the court for automatic review pursuant to Article 66, 10 U.S.C.A. § 866 UCMJ. We have examined the record of trial, reviewed the assignments of error and the government’s reply thereto, and heard oral argument. The appellant asserts, inter alia, that the drunk driving charges were brought in violation of Army policy against double jeopardy prosecutions; that the prior state court convictions for the same misconduct were erroneously admitted into evidence; that the findings of guilty were factually insufficient; and that appellant was deprived of a fair trial because of prosecutorial misconduct. With the exception of the factual sufficiency of one specification, we disagree with appellant’s assertions and affirm.
Facts
In November 1991, appellant accepted nonjudicial punishment under Article 15, 10 *531 U.S.C.A. § 815 UCMJ, for drunk driving on Fort Bliss. As an additional consequence of this misconduct, appellant’s on-post driving privileges were administratively suspended for one year. On 31 January 1993, appellant was cited by civilian police in El Paso, Texas, for drunk driving. A validly administered breath test revealed that the concentration of alcohol in his breath was 0.142 grams of alcohol per 210 liters of breath. As a result, appellant was enrolled in the Texas Pre-Trial Diversion Program which would have permitted him to avoid a permanent record of conviction if he had successfully completed the program. On 12 June 1993, appellant was again cited by El Paso police for drunk driving after he recklessly drove his car off the road at a high rate of speed. His car ripped a twenty-five-foot section of metal guardrail from its wood and concrete foundation, and catapulted it several hundred feet from the point of impact. The vehicle went airborne, impacted a ditch, turned over, and slid on its top for sixty-nine feet before it smashed into a concrete abutment. Three passengers and the appellant were injured. Appellant’s blood alcohol concentration thirty minutes following the accident was 0.165 grams of alcohol per 100 milliliters of blood.
On 3 August 1993, appellant’s commander preferred charges for the last two incidents of off-post drunk driving, as well as for violating orders of NCOs not to drive his vehicle until safety deficiencies were corrected, and violations of a lawful regulation by driving his car without a valid driver’s license, a valid safety inspection sticker, or valid proof of liability insurance. On 23 October 1993, the charges were referred to trial by general court-martial. On 27 October 1993, appellant’s civilian defense counsel informed the trial counsel that appellant had recently pleaded guilty in a Texas state court for the same off-post drunk driving offenses for which charges were pending under the UCMJ.
I. Double Jeopardy Prosecution
Appellant asserts that the military judge erred to the substantial prejudice of the appellant when he denied the trial defense counsel’s motion to dismiss the drunk driving charges as violative of Army policy against double jeopardy prosecution. We disagree.
The Fifth Amendment protection against double jeopardy protects against successive prosecutions by the same sovereign. Thus, both the appellant and the government agree that the earlier state prosecution in this case could not bar the subsequent court-martial because these cases were prosecuted under the authority of separate sovereigns. United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); United States v. Stokes, 12 M.J. 229 (C.M.A.1982). Nevertheless, successive prosecutions by different sovereigns are not favored under military law as a matter of policy. Stokes, 12 M.J. at 230; Rule for Courts-Martial 201(d). Department of Army policy provides that, “A person subject to the UCMJ who has been tried in a civilian court may, but ordinarily will not, be tried by court-martial....” Army Reg. 27-10, Legal Services: Military Justice, para. 4-2 (22 Dec. 1989) [hereinafter AR 27-10]. In order to try a soldier by court-martial on charges for which the soldier has been previously convicted in state court, the regulation requires an officer exercising general court-martial jurisdiction to authorize disposition of the case under the UCMJ. In exercising this authority, the genera] court-martial convening authority “... must personally determine that authorized administrative action alone is inadequate and punitive action is essential to maintain discipline in the command....” AR 27-10, para. 4-3.
The day after the civilian trial defense counsel notified the prosecution of the accused’s guilty pleas to the drunk driving charges in state court, the staff judge advocate advised the general court-martial convening authority of the previous state convictions and the Army policy promulgated in AR 27-10. The convening authority specifically authorized the continued prosecution by court-martial of the drunk driving charges. In doing so, he made detailed findings that administrative action was inadequate and trial by court-martial was essential to maintain discipline in the command. The factual findings were supported by a reasonable belief that appellant had committed three drunk *532 driving offenses over a twenty-month period, one of which resulted in injuries to four soldiers within his command. Additionally, the convening authority was aware that: (1) After the first drunk driving offense, the appellant was punished under Article 15, 10 U.S.C.A § 815 UCMJ, and suffered separately-imposed regulatory administrative sanctions; (2) after the second offense, prosecution was deferred by civilian authorities as part of a diversion program; and (3) on the day of the third offense which caused injury to himself and three others, appellant had been given an order not to drive his car until safety deficiencies had been corrected.
At trial the defense attacked the propriety of the convening authority’s decision to continue prosecution in view of the Army’s policy. The defense alleged that the convening authority had been misadvised of the facts by a vengeful prosecutor. Civilian defense counsel further claimed that the government had failed to comply with a Memorandum of Understanding (MOU) between civilian authorities and Fort Bliss. The defense argued that the MOU required written coordination and release of jurisdiction by civil authorities before Fort Bliss authorities could prosecute the appellant for these off-post drunk driving offenses. Although the civilian defense counsel failed to prove that a valid MOU actually remained in effect — or if it did, that the MOU had even been violated — the military judge granted the defense additional time to raise these issues in a petition to the general court-martial convening authority.
In a comprehensive attack on the prosecution, which included all the allegations and arguments summarized above, the defense presented a written petition to the acting convening authority. Defense counsel argued that the ends of justice could only be served by dismissing the drunk driving charges since that misconduct had been previously punished in state court. After considering the defense petition and the staff judge advocate’s advice, the acting commander and convening authority denied the defense petition that the drunk driving charges be dismissed and specifically authorized continued prosecution of appellant.
Subsequently, the military judge denied a renewed defense motion to dismiss based on the policy against successive prosecutions, and made findings of fact and conclusions of law. He specifically found that there was no prosecutorial misconduct by the trial counsel. In addition to finding that no misstatements of material fact had been made to the convening authority, he concluded that any danger of taint was cured by the defense petition submitted to the convening authority. In this regard, the defense presented the facts as the defense perceived them to be and made both legal and equitable arguments. For purposes of deciding the motion, the military judge assumed the unsigned MOU was operative, but he concluded as a matter of law that the MOU did not bar this prosecution. The judge concluded that the provisions of AR 27-10 had been followed and that the acting convening authority did not abuse his discretion in denying the petition. The military judge also found that the acting commander’s decision amounted to a ratification of the earlier decision by the convening authority to prosecute these charges.
Our standard of review is whether the military judge abused his discretion in denying the motion. United States v. Cole, 31 M.J. 270 (C.M.A.1990). We are convinced he did not. First, the military judge’s findings of fact were fully supported by the evidence. Second, we agree with the military judge that the convening authorities made supportable decisions in accordance with AR 27-10 that discipline within the command justified prosecution by court-martial. Thus, we conclude that the convening authority was in full compliance with the Army policy. United States v. Schneider, 38 M.J. 387, 392 (C.M.A 1993), cert, denied, — U.S.-, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994). Furthermore, we concur with the military judge’s conclusion that the decisions to proceed with the court-martial did not violate the MOU. While we are not convinced that the MOU was even in existence at the time this case was processed, we find as fact that the trial counsel had coordinated with the local prosecutor, who agreed to defer civilian prosecu *533 tion in favor of a court-martial.[1] This verbal coordination was all that was required by the MOU. Considering all the circumstances, we find that the military judge did not abuse his discretion in denying the motion.
II. Admissibility of Prior Convictions
Appellant asserts that the military judge erred when he admitted, over defense objection, proof of the Texas convictions for the drunk driving offenses which included “extraneous, prejudicial attachments.”
At trial, the military judge admitted into evidence the civilian convictions for drunk driving as substantive proof of guilt of the drunk driving specifications. Prosecution Exhibits (P.E.) 15 and 16 contained multiple documents pertaining to each of the two civilian drunk driving charges as follows: The judgment and sentence; a docket journal entry of the judgment and sentence; the information and complaint for each offense; a record of entry of guilty plea and waiver of rights; and requests for consent to waive jury trial for each charge. Prosecution Exhibit 16, pertaining to the 31 January 1993 offense, also included a warrant and record of referral/termination of the Pre-Trial Diversion Program.
The civilian trial defense counsel initially objected on the basis that these convictions were irrelevant to the charges pending in this case. He argued that if the convictions were relevant, then they were exactly the same transactions and “res judicata” would bar trial by court-martial. In a dialogue with counsel, the military judge explained that he would rule later on the issue of double jeopardy, and invited further argument on the issue of relevancy. Defense counsel never articulated a relevance argument. The military judge ruled that the evidence was relevant because the documents showed that the appellant had pleaded guilty to offenses in civilian court that were essentially identical to those which were then before the court-martial.[2] The military judge also overruled objections based on hearsay, authentication, and the best evidence rule.
We find that the military judge did not abuse his discretion in overruling the objections to this evidence. Cole, 31 M.J. at 272. We agree with his conclusions that the convictions were relevant under Military Rule of Evidence 401 [hereinafter Mil.R.Evid.], and admissible under the “Judgment of previous conviction” exception to the hearsay rule. Mil.R.Evid. 803(22). The obvious relevancy of these convictions is that appellant had made judicial admissions to facts essential to sustain the Texas convictions,[3] and these *534 same facts tend to prove the elements of the UCMJ offenses. Furthermore, the “extraneous” documents complained about on appeal were relevant to reinforce the reliability of appellant’s admissions because the documents show that appellant pleaded guilty and waived his rights voluntarily, intelligently, and knowingly and that his pleas were supported by the evidence. In fact, the statute (see footnote 3) requires a written record of waiver of rights and consent to a stipulation of fact in support of a plea of guilty.
As for hearsay, the exhibits meet the three prongs of Rule 803(22): (1) Evidence of a final judgment entered upon a plea of guilty; (2) for a crime punishable as a felony under federal standards; (3) offered to prove a fact essential to sustain the judgment. United States v. May, 18 M.J. 839, 843-844 (N.M.C.M.R.1984). Here, evidence of final felony convictions was offered to show that appellant had made prior judicial admissions which were essential to sustain the findings of guilty of the Texas charges.
Once evidence is established as relevant and otherwise admissible, it may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Mil.R.Evid. 403. We note that the government conceded in oral argument that the Texas convictions probably should not have been admitted under Rule 403 because the convictions unfairly invaded the province of the members, and because of potential Fifth Amendment problems. Without deciding the issue of admissibility under Rule 403, we find any error harmless because the evidence of guilt independent of the civilian convictions was overwhelming. We will discuss the quality and quantity of the evidence of drunk driving in the Factual Sufficiency section that follows.
III. Factual Sufficiency
We have carefully weighed the evidence in the record and made allowances for not having personally observed the witnesses. We are ourselves satisfied beyond a reasonable
doubt of appellant’s guilt as to the drunk driving charges, regulatory violations, and one of the disobedience specifications. United States v. Turner, 25 M.J. 324 (C.M.A. 1987). For reasons stated below, however, we find the government failed in its burden to prove appellant guilty of the 2 June 1993 violation of the order issued by Sergeant (SGT) Cook.
A. Drunk Driving
For purposes of analysis, we exclude the Texas convictions and find the remaining evidence of appellant’s guilt of the drunk driving specifications to be substantial and factually sufficient. With regard to the drunk driving offense on 31 January 1993, the arresting police officer testified that he observed the appellant speeding and running a red light. After he stopped the appellant, he smelled a moderate odor of alcohol on appellant’s breath, observed appellant’s bloodshot eyes, and noticed appellant was having trouble “... keeping a straight balance.” Suspecting him of drunken driving, he transported appellant to the police station where another officer, who was certified to operate an intoxilizer instrument, administered an alcohol breath test. This police officer provided the foundation for admission of the record of the appellant’s alcohol concentration level at 0.142 grams per 210 liters of breath. He also testified that in his opinion, based upon his observations of appellant and his fifteen years of police experience, appellant was intoxicated.
As to the 12 June 1993 drunk driving charge, the evidence reveals that appellant admitted to having consumed a partially filled forty-ounce cup containing a mixed drink and one beer. Although neither of his two companions could testify whether appellant had consumed alcohol before they came together that evening, they did testify that before he drove his car, appellant drank at least a twenty-ounce mixed drink and a beer. Moreover, appellant’s wanton recklessness that resulted in the accident was *535 itself strong circumstantial evidence of alcohol impairment. Thirty minutes after the accident, appellant’s blood alcohol level was 0.165.[4] Although he admitted to having consumed alcohol, appellant said he “felt fine,” the same way he felt when he was stopped on 31 January 1993.
Considering all of the evidence except the Texas convictions, we are satisfied that the quality and quantity of the remaining evidence would have compelled findings of guilty by the members. We are ourselves satisfied of the appellant’s guilt based on the remaining evidence. Turner, 25 M.J. at 325.
B. Violation of NCO Orders
Sergeant Cook, the appellant’s squad leader, inspected the appellant’s car in March or April 1993. Observing bald rear tires and no state safety inspection, SGT Cook ordered appellant not to drive his car until the deficiencies were corrected. Subsequently, SGT Krahenbuhl inspected the appellant’s vehicle and, noting the same deficiencies, he issued an order similar to the one issued by SGT Cook. When he issued the order, however, he told appellant not to drive “unless [you are] going to get it fixed.” Under direct and cross examination, SGT Krahenbuhl readily admitted that his order contemplated an exception under which appellant could drive for the purpose of correcting the safety problems. As to Specification 1 of Charge I, the government failed to prove beyond a reasonable doubt that appellant was not driving his car in order to correct the deficiencies. Since Specification 2 pertains to a violation of the order occurring at the time appellant drove drunk at 0230 hours, we are satisfied that the exception to the order could not have applied. Therefore, we will only set aside the finding of guilty as to Specification 1 of Charge I.
IV. Prosecutorial Misconduct
Finally, appellant asserts that prosecutorial misconduct permeated the entire trial process, and therefore the charges should be dismissed. His appellate brief contains a broadside attack on the trial counsel and the “legal office” for their actions throughout the processing of the case. Some of the allegations are issues that were raised and resolved adversely to appellant at trial, and others are raised for the first time on appeal. We have carefully reviewed the entire record and do not conclude that the prosecution’s conduct was improper or constituted prosecutorial misconduct. For those errors raised at trial, we find that the military judge carefully neutralized any potential prejudice. We conclude that the appellant’s substantial rights were not prejudiced by any of these alleged errors, and that he was not deprived of a fair trial.
The remaining assertions of error are without merit.
The finding of guilty of Specification 1 of Charge I is set aside and Specification 1 of Charge I is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for thirty-two months, forfeiture of $450.00 pay per month for thirty-two months, and reduction to Private El.
Judge GONZALES and Judge RUSSELL concur.

. Apparently, in a subsequent transfer of the case from one civilian prosecutor to another, this agreement was overlooked. However, neither the MOU nor this oversight in its application, conferred any right of relief on the appellant.

. The pertinent portion of the Texas statute on driving while intoxicated was admitted into evidence. It defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol.” This definition is remarkably similar to the definition of "drunk" found in the Manual for Courts-Martial as follows: "[A]ny intoxication which is sufficient sensibly to impair the full exercise of the mental or physical faculties." Manual for Courts-Martial, United States, 1984, Part IV, para. 35c(3). The Texas statute also defines intoxication in terms of having an alcohol concentration of 0.10 (grams of alcohol per 210 liters of breath; or, grams of alcohol per 100 milliliters of blood), the same standard contained in Article III, 10 U.S.C.A. § 911 UCMJ.

. We take judicial notice of the Texas statute, set forth below, which prevents conviction based on a guilty plea "without sufficient evidence to support the same." We note the statute allows the guilty plea to be supported by a stipulation of fact, and that P.E.’s 15 and 16 contain appellant’s consent to a stipulation of fact.
Art 1.15[12][21][22] Jury in felony
No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documenta *534 ry evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause.
Tex.Code Crim.Proc.Ann. art. 1.15 (1993).

. In challenging the factual sufficiency of this charge, appellant asserts that the chain of custody of the blood sample drawn and tested at the hospital was legally inadequate. We are satisfied as a matter of fact that the reported blood alcohol content of 0.165 resulted from the proper laboratory testing of appellant’s blood. Our factual conclusion is based on the testimony of the nurse who drew the blood, the lab supervisor, the technical director of the hospital’s chemistry and toxicology sections, and an examination of the lab report. We are satisfied that the medical chain of custody preserved the evidence of appellant’s blood in an unaltered state, and there is a high degree of legal and medical confidence that the result is appellant’s blood alcohol content. United States v. Nault, 4 M.J. 318 (C.M.A.1978).