# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class JEREMIAH W. RAPMUND**
**United States Army, Appellant**

ARMY 20170564

U.S. Army Maneuver Support Center of Excellence
J. Harper Cook, Military Judge
Colonel John T. Rothwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA (argued)[1]; Lieutenant Colonel Tiffany D. Pond, JA; Major Todd W. Simpson, JA; Lieutenant Colonel Christopher D. Carrier, JA (on brief); Captain Joseph C. Borland, JA.

For Appellee: Major Catharine M. Parnell, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Major Marc B. Sawyer, JA (on brief); Captain Brian D. Jones, JA.

21 October 2019

---------------------------------------
MEMORANDUM OPINION
---------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Appellant asserts the definition of "drunk" in the military judge's panel instructions misrepresented the law, which resulted in his convictions for drunken operation of a vehicle, negligent homicide, and involuntary manslaughter. Appellant also claims his conviction for involuntary manslaughter was not supported by

---

[1] The court heard oral argument on 10 September 2019 at the University of New Mexico School of Law as part of the court's Outreach Program.

sufficient evidence of culpable negligence.[2] We disagree and affirm appellant's convictions and sentence.

## BACKGROUND

### *The Crash*

Appellant was at Fort Leonard Wood, Missouri, attending the Senior Leader Course. At around 1900 on 21 September 2016, appellant met a friend, BL, for dinner at Ichiban Steak House. They each drank one beer. After dinner, they drove separately to Chicken Bones, a bar, where they drank another beer. They proceeded next door to another bar, Big Louie's, where they drank about four beers each until around midnight. According to appellant's sworn statement, he consumed six beers between 1930 hours and midnight.

Appellant and BL then decided to go to BL's home. They drove separately, with appellant following BL. While driving down a service road parallel to a state highway in Missouri, BL saw a pedestrian, WJ, walking on the right-hand side of the road.[3] BL avoided hitting WJ by crossing the center line into the lane for oncoming traffic. Appellant, however, struck WJ with his truck and killed him on impact at

---

[2] An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of involuntary manslaughter, drunken operation of a vehicle, negligent homicide, and fleeing the scene of an accident, in violation of Articles 119, 111, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 919, 911, and 934 [UCMJ]. The military judge found the negligent homicide and involuntary manslaughter convictions were an unreasonable multiplication of charges and conditionally dismissed the negligent homicide. The military judge also merged for sentencing purposes the drunken operation of a vehicle and the involuntary manslaughter offenses. The panel sentenced appellant to a bad-conduct discharge and confinement for six months. Appellant was credited with five days of pre-trial confinement credit and forty days of Article 13, UCMJ credit. The convening authority approved the sentence as adjudged, and awarded the confinement credit.

[3] Evidence was presented at trial that WJ was walking with his back to oncoming traffic wearing dark pants and a light colored shirt. At trial, defense counsel argued that WJ contributed to the crash. In accordance with the Military Judges' Benchbook, the military judge gave the standard instruction on contributory negligence. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 5-19 (10 Sept. 2014) [Benchbook]. Neither party objected to the instruction.

approximately 0005. BL did not see appellant hit WJ, but she did notice in her rearview mirror that appellant's truck had only one headlight, so she pulled into a driveway. Approximately five minutes later, appellant walked up to BL, hysterical, holding his hands to his head, muttering "oh, my God. Oh, my God." Appellant stated he thought he hit something. The owner of the driveway, Mr. JM, came outside and overheard appellant saying, "What have I done?" or "What should I do?"

Appellant continued to BL's house. Using the flashlight from her cell phone, BL returned to the area where she thought appellant had struck something. Seeing nothing she returned to her car and drove home. When she arrived at home, appellant was not there; however, he arrived shortly thereafter.

After BL saw the damage to appellant's truck, she told him at least twice to call 911. At 0021, appellant called 911 and told the dispatcher he had an accident and he was not sure if he hit a deer or a person. Appellant stated he looked in the grass and "called out," but did not see a person or a deer. After the 911 phone call, appellant then drank water and smoked a cigarette.

Police were dispatched to the area where appellant indicated the accident occurred. Within one to two minutes of police arriving on the scene, WJ's body was located approximately fifteen feet from the road.

Another police officer was dispatched to appellant's location. Upon making contact with appellant, the officer noted he smelled alcohol on appellant's breath; however, appellant stated he had not been drinking. Upon examining the vehicle with the officer, appellant was informed that it did not appear that he had struck a deer. Appellant responded, "oh my God. I hope it wasn't a person." The officer then informed appellant that other officers had confirmed that appellant had hit a person and the person was dead. When he notified appellant of this, appellant admitted he had consumed six beers over the course of the evening.

Appellant was arrested for leaving the scene of an accident and transported to the police station. Upon arrival at the police station, a series of Standardized Field Sobriety Tests (SFST) were conducted. Although appellant displayed some indicators of intoxication, he did not have the necessary number of indicators to presume intoxication under the SFST manual. At 0123, approximately an hour and a half after the accident, appellant submitted to a breathalyzer which yielded a 0.07 Blood Alcohol Content (BAC).[4]

---

[4] The specification of drunken operation of a vehicle was charged to include the language "and while the alcohol concentration in his breath was equal to or exceeded .08 grams of alcohol per 210 liters of breath, as shown by chemical analysis, which

(continued . . .)

*The Trial*

At trial, a forensic toxicologist testified for the government that, "after the first drink, as soon as the alcohol reaches the brain, there's impairment." The government expert also explained that when a person is under the influence of alcohol, "everything is slowed down." He further explained that alcohol impairs functions of the mind, such as "reaction time, multitasking, perception, judgment," and other functions prior to causing physical effects.

The government also presented expert testimony that appellant was driving approximately 52-56 miles per hour when he struck WJ. The posted speed limit was 45 miles per hour.

Following the close of evidence, the military judge provided draft finding instructions to counsel for review. Appellant did not object to any of the military judge's instructions, which included the definition of "drunk." The military judge instructed the panel that, in order to find appellant guilty of drunken operation of a vehicle, they must find that he was drunk. He defined drunk as relating "to intoxication by alcohol, and means any intoxication sufficient to impair the rational and full exercise of the mental or physical faculties."[5]

In closing argument, the trial counsel argued that appellant "had alcohol in his system and that alcohol was sufficient to impair the [r]ational and full use of his mental and physical faculties."

## LAW AND DISCUSSION

*A. The Military Judge's Instructions*

Appellant claims the panel instructions provided by the military judge misrepresented the law by stating that any impairment by alcohol was sufficient to convict appellant of the offense of drunken operation of a vehicle. Appellant further claims that this asserted misrepresentation of the law "led the panel members to improperly convict on the offenses of drunken operation of a vehicle, negligent

---

(. . . continued)
is the limit under Missouri Revised Statute 577.01." However, the panel excepted this language from the specification in its findings.

[5] This is exactly how the Benchbook defines "drunkenness." *See* Benchbook, para. 3-35-1, note 11. We also note that the *Manual for Courts-Martial*, United States (2016 ed.) [*MCM*], pt. IV, ¶ 35.c.(6), provides an identical definition of "drunk."

homicide, and involuntary manslaughter." We disagree. We find the military judge correctly instructed the panel on the definition of "drunk," and therefore, did not commit plain error.

We review the adequacy of a military judge's instructions to a panel de novo. *United States v. Torres*, 74 M.J. 154, 157 (C.A.A.F. 2015). "Instructions given by a military judge must be sufficient to provide necessary guideposts for an informed deliberation on the guilt or innocence of the accused." *United States v. Killion*, 75 M.J. 209, 210 (C.A.A.F. 2016) (citing *United States v. Dearing*, 63 M.J. 478, 479 (C.A.A.F. 2006) and Rule for Courts-Martial (R.C.M.) 920(e)(1), (7) (internal citations and quotation marks omitted). "Failure to provide correct and complete instructions to the panel before deliberations begin may amount to a denial of due process." *Killion*, 75 M.J. at 213 (quoting *United States v. Wolford*, 62 M.J. 418, 419 (C.A.A.F. 2006)).

When an instructional error is preserved, we test for harmlessness. *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017). However, if, as in appellant's case, appellant fails to object to a panel instruction at trial, we review for plain error. *Id*. Under a plain error analysis, appellant has the burden to show: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *Id*. at 230 (quoting *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014)). If the error is constitutional, as appellant alleges, prejudice is tested for harmlessness beyond a reasonable doubt. *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019).

As an initial matter, and as appellant concedes in his brief, all instructions provided were standard instructions from the Military Judges' Benchbook. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook (10 Sept. 2014) [Benchbook].

### 1. Drunken Operation of a Vehicle

Appellant asserts that the definition of "drunk" in the *MCM* and the Benchbook is derived from the standard applicable to the offense of drunkenness on duty, in violation of Article 112, UCMJ. Appellant contends that the application of the fitness for duty standard "to the operation of a privately owned vehicle, off-post, while not on duty," is not justifiable. However, the Benchbook and the *MCM*'s

definition of drunk is consistent with the drunk driving statutes in many state statutes.[6]

For example, this court noted that the Texas statute addressing driving while intoxicated defined "intoxicated" as "not having the normal use of mental or physical faculties by reason of introduction of alcohol." *United States v. Bordelon*, 43 M.J. 531, 535 n.2 (Army Ct. Crim. App. 1995). Notably, the Missouri driving while intoxicated statute defines "intoxicated" as "when a person is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." MO. REV. STAT § 577.001. We find the *MCM*'s and the Benchbook's definition of "drunk" to be entirely justifiable and applicable to the operation of a privately owned vehicle, off-post, while not on duty. Accordingly, the military judge did not err in instructing the panel.

### 2. *Involuntary Manslaughter and Negligent Homicide Instructions*

Because we find the military judge did not commit error, let alone plain or obvious error, we need not address appellant's further claim that the military judge's definition of drunk "led the panel members to improperly convict" on the offenses of negligent homicide and involuntary manslaughter.[7] First, the definition of "drunk" was not given as being applicable to those two offenses. In that the panel was not instructed as to the definition "drunk" on those two offenses, the panel is presumed to follow a military judge's instructions and only consider evidence for a proper purpose. *See United States v. Collier*, 67 M.J. 347, 355 (C.A.A.F. 2009). Second, any potential danger that the panel considered an instruction or evidence from one charged offense to convict on another offense was cured with the military judge's spillover instruction which stated:

---

[6] *See, e.g.*, ARIZ. REV. STAT. ANN. § 28-1381(outlawing operating a vehicle "while under the influence of intoxicating liquor . . . if the person is impaired to the *slightest degree*.") (emphasis added); DEL. CODE. ANN. Tit. 21, § 4177(a)(5) (defining "under the influence" to mean that a "person is, because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been, either mentally or physically to exercise clear judgment, sufficient physical control, or due care in driving a vehicle."); GA. CODE ANN. § 40-6-391(a) (outlawing driving a vehicle "while under the influence of alcohol to the extent that it is less safe for the person to drive.").

[7] We note the military judge provided instructions regarding involuntary manslaughter and negligent homicide consistent with the Benchbook. *See* Benchbook, paras. 3-44-2, 3-85-1.

> An accused may be convicted based only on the evidence before the court, and not on evidence of general criminal disposition. Each offense must stand on its own, and must keep the evidence of each offense separate. Stated differently, if you find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense. If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

As with all of the military judge's panel instructions, the military judge's spillover instruction was consistent with the Benchbook instruction. *See* Benchbook, para. 7-17. The military judge instructed the panel to keep the evidence of each offense separate. For this reason, even assuming the military judge erred in instructing the panel on the definition of "drunk" as to the offense of drunken operation of a vehicle, we find any potential error was harmless beyond a reasonable doubt with regards to any potential impact on appellant's involuntary manslaughter and negligent homicide convictions. *See Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019).

## B. *Legal and Factual Sufficiency of Appellant's Involuntary Manslaughter Conviction*

Appellant challenges the factual sufficiency of his conviction for involuntary manslaughter as not supported by sufficient evidence of culpable negligence. We review issues of legal and factual sufficiency de novo. Article 66, UCMJ, 10 U.S.C. § 866; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (quotation omitted). The test for a factual sufficiency review is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the service court are themselves convinced of appellant's guilt beyond a

7

reasonable doubt." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2014) (emphasis in original).

Pursuant to our review of the evidence under Article 66, UCMJ, we are personally convinced of appellant's guilt beyond a reasonable doubt for the specification of involuntary manslaughter. The government was required to prove that appellant unlawfully killed WJ by culpable negligence. *See MCM*, pt. IV, ¶ 44.a. Culpable negligence is defined as "a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." *MCM*, pt. IV, ¶ 44.c.(2)(a)(i).

The record establishes that appellant drank six beers and was driving in excess of the speed limit, at night, on an unlit road. That appellant would strike and kill a pedestrian while driving under these circumstances was a foreseeable consequence of his actions. This evidence supports beyond a reasonable doubt that appellant was culpably negligent, and thus guilty of involuntary manslaughter.

## CONCLUSION

The findings as to The Specification of Charge I, The Specification of Charge II, and Specification 2 of Charge III are AFFIRMED. The finding as to Specification 1 of Charge III is DISMISSED conditioned upon The Specification of Charge I surviving "final judgment" of the proceedings. The sentence is AFFIRMED.

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court