**UNITED STATES, Appellee**

v.

**Walter D. DAVIS, Private First Class U.S. Army, Appellant.**

**No. 68,022.**
**CMR No. 9100839.**

U.S. Court of Military Appeals.

Argued Feb. 2, 1993.

Decided June 25, 1993.

For Appellant: *Captain Michael E. Smith* (argued); *Lieutenant Colonel James H. Weise* and *Major James M. Heaton* (on brief); *Colonel Robert B. Kirby* and *Captain Emmett G. Wells.*

For Appellee: *Lieutenant Colonel Joseph A. Russelburg* (argued); *Colonel Dayton M. Cramer, Major Kenneth T. Grant, Captain Donna L. Barlett* (on brief); *Captain Samuel J. Smith, Jr.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted by a military judge sitting alone of missing movement by neglect, provoking speech, drunk and disorderly conduct, and impersonating a noncommissioned officer, in violation of Articles 87, 117, and 134, Uniform Code of Military Justice, 10 USC §§ 887, 917, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 1 year, total forfeitures, and reduction to the lowest enlisted grade, which the convening authority approved. The Court of Military Review affirmed the findings and sentence. 34 MJ 849 (1992). We granted review on the following issues:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION FOR A FINDING OF NOT GUILTY TO THE SPECIFICATION OF CHARGE II (PROVOKING SPEECH).

SPECIFIED ISSUE

> WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION CONCERNING UNLAWFUL COMMAND INFLUENCE.

## I. Issue Raised by Counsel

### A. FACTS

On December 30, 1990, appellant was scheduled to deploy to Saudi Arabia. Since he knew he could not consume alcohol in Saudi Arabia, he and a friend decided to go out for a night on the town, prior to their scheduled deployment. In preparation for the evening festivities, appellant decorated himself with two American flags which he wrapped around his body as he entered the enlisted club. Another soldier in the club became upset with appellant for wearing the American flag around his body. The two began to argue. Thereafter, someone in the club called the Military Police (MP).

Sergeant Timothy Melendez of the 127th Military Police Company responded to the call. When he arrived at the scene, appellant and another soldier were still arguing. Melendez questioned appellant about why he was wearing the flags in such a manner. Appellant responded, "Fuck you, I'm not doing anything wrong" and "Hey, give me a break; I'm proud to be an American, and I'm getting ready to go to Saudi Arabia." Sergeant Melendez talked appellant into removing the flags and his companion into taking him back to their barracks. Thereafter, appellant left the club. Sergeant Melendez told the club manager that the situation was under control and that he should call the military police again if appellant were to return. As Melendez was leaving the crowded club and returning to his vehicle, he heard appellant yell, "Fuck you, Sergeant," and "Fuck the MPs," numerous times. Appellant's comments were heard not only by Melendez but also by the crowd outside waiting to enter. Appellant stopped yelling when Melendez came toward him, but nonetheless he was arrested. Melendez testified that part of his training as an MP was to deal with people who are "disorderly and abusive."

At trial, after the prosecution rested, the defense made a motion for a finding of not guilty. The defense argued that since Sergeant Melendez was not upset, provoked, or enraged, the Government did not satisfy its burden of proof. The judge denied the motion.

### B. DISCUSSION

RCM 917(a), Manual for Courts-Martial, United States, 1984, provides: "The military judge, on motion by the accused ... shall enter a finding of not guilty ... after the evidence on either side is closed and before findings ... if the evidence is insufficient to sustain a conviction of the offense affected." This motion is similar to the motion for judgment of acquittal under Fed.R.Crim.P. 29(a).

In *United States v. Tobin*, 17 USCMA 625, 628–29, 38 CMR 423, 426–27 (1968), this Court stated the test is whether "there is any substantial evidence before the court which, together with all justifiable inferences to be drawn therefrom, reasonably tends to establish every essential element of these offenses." The same standard has been incorporated into RCM 917(d), which states:

> A motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses.

The Manual sets forth the elements of Article 117 as follows:

> (1) That the accused wrongfully used words or gestures toward a certain person;
>
> (2) That the words or gestures used were provoking or reproachful; and
>
> (3) That the person toward whom the words or gestures were used was a person subject to the code.

Para. 42b, Part IV, Manual, *supra.* According to the Explanation:

> As used in [the second element], "provoking" and "reproachful" describe those words ... which are used in the presence of the person to whom they are directed and which a reasonable person would expect to induce a breach of the peace under the circumstances.

Para. 42c(1).

■ The issue here is whether, drawing all reasonable inferences in favor of the Government, appellant's wrongful use of the words "Fuck you, Sergeant" and "Fuck the MPs" was expected to induce a breach of the peace under the circumstances of this case. In analyzing this issue it is helpful to look at the history of Article 117 and prior case law.

The roots of Article 117 of the Code go back 200 years. *United States v. Peak,* 44 CMR 658, 661 (CGCMR 1971). A prohibition against using provoking words appeared in the Articles of War of 1775, 1776, 1806, and 1874. *Id.* at 661. The rationale behind the prohibition was to serve as a check against "manifestations of a hostile temper as, by inducing retaliation." W. Winthrop, *Military Law and Precedents* 590 (2d ed. 1920 Reprint). Thus, its design is to prevent retaliation by individuals who are the hearers of the words. *United States v. Cooper,* 34 CMR 615 (ABR 1964).

In *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court struck down a Connecticut statute prohibiting solicitations without prior approval. But the Court stated:

> One may, however, be guilty of the offense if he commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.

310 U.S. at 309–10, 60 S.Ct. at 905–06.

In *Cooper* the Board of Review held that a statement to a person working in the mess to "come on the other side of the serving line and I'll kick your ass so you won't look my way" constituted provoking words under Article 117. The provision in paragraph 42c that the words be "used in the presence of the person" is not necessarily limited to the person to whom they are directed but also applies to other individuals who are part of the audience who may react to the words. One Board of Review has opined:

> We find nothing [in the Manual] ... which limits "presence" to that which the victim can plainly see and if the gestures are seen by any companion of the victim or other witnesses they may as readily *tend* to induce breaches of the peace, not only because they arouse or incite the witnesses but also because the person towards whom the gestures are directed may not be relied upon to continue unaware of the provocative action behind his back.

*United States v. Hughens,* 14 CMR 509, 511 (NBR 1954).

Appellant cites *United States v. Shropshire,* 34 MJ 757 (AFCMR 1992), and *United States v. Thompson,* 22 USCMA 88, 46 CMR 88 (1972), in support of his position. But a careful review of the facts in these cases reveals clearly distinguishing factors.

In *United States v. Shropshire, supra,* appellant was charged with wrongfully using the words, "Here's another nigger" and "I am going to kill you, nigger." These words were directed at a security policeman in the execution of his duties who had arrived at the scene after the clearly drunk and disorderly appellant had been apprehended and handcuffed by other security police personnel. Applying the Manual test as to whether these words would be

expected to induce a breach of the peace, the court answered no, stating:

Appellant certainly expressed extremely insulting and repugnant comments; however, it is not reasonable to conclude that they would provoke the security policeman at whom they were directed to breach the peace. It is not uncommon for a person under apprehension to hurl taunts at the police. The police, in turn, are specifically trained to overlook verbal abuse in such situations and maintain a professional demeanor.

Evaluating a charge of provoking speech, we find it appropriate to apply a separate standard to words directed at a policeman by a *handcuffed suspect* under apprehension, than to the same words said to an ordinary citizen.

*Id.* at 758 (emphasis added).

In *United States v. Thompson, supra,* a prison guard, Specialist Sawin, woke the prisoners in the cellblock, including appellant. Upon returning to the cellblock and finding the accused still in bed, Sawin warned him to get up. Appellant hollered, "Don't yell at me or I'll wring your _____ neck." 22 USCMA at 89, 46 CMR at 89. The *Thompson* Court did not hold these were provoking words because they could not "agree that in the circumstances of this case [the words] either tended to or were likely to provoke a reasonable guard who was *outside the cell* into entering and responding with violent actions or words." *Id.* at 90, 46 CMR at 90 (emphasis added).

■ Here, appellant was neither apprehended and handcuffed nor confined in a prison cell. We agree with the following from the Court of Military Review:

It is not necessary that the words have to be a challenge to do violence.... Insulting words can also be provoking....

Here appellant used words that are not threatening but are nonetheless provoking and reproaching to a reasonable person because of their tendency to lead to quarrels, fights, or other disturbances.

34 MJ at 851.

We conclude that the military judge did not err in refusing to grant appellant's motion for a finding of not guilty at trial.

## II. Specified Issue

### A. FACTS

Appellant alleges that his immediate commander, Major Clifford Anderson, was unlawfully influenced by the brigade commander, Colonel Burke, to dispose of the offenses by court-martial. Major Anderson was called as a witness and confirmed that he initially considered giving appellant punishment under Article 15, UCMJ, 10 USC § 815, and sending him to Saudi Arabia. However, on January 28, 1991, Major Anderson recommended that appellant be tried by general court-martial. Major Anderson testified that he at first considered a BCD special court-martial for the missing-movement charge because that was the "norm" in the division; however, when he saw the other charges, he thought a general court-martial was appropriate. After hearing testimony in the case, the military judge made specific detailed findings as follows:

Major Anderson adhered to his decision to recommend trial by general court-martial because he felt the charges against the accused were too serious to be held at any other level than a general court-martial.

Colonel Burke at no time intimated to Major Anderson that an Article 15 was inappropriate and therefore the accused should be tried by a general court-martial.

Major Anderson did not say to anyone that Colonel Burke said a general court-martial was the only appropriate disposition of the accused's case.

Major Anderson's recommendation for a general court-martial was arrived at independently and was therefore free from any unlawful command influence.

[T]here is no "division norm" in the 3d Armored Division for the disposition of allegations involving failure to deploy to the Kingdom of Saudi Arabia.

### B. DISCUSSION

■ Thus, after a review of the facts, the military judge concluded that Major

Anderson independently arrived at his decision to recommend a general court-martial and that he was not unlawfully influenced by superior authority in arriving at his decision. *Cf. United States v. Hawthorne*, 7 USCMA 293, 22 CMR 83 (1956). There is nothing in the record of this case to persuade us to the contrary.

Thus we conclude that there was no unlawful command influence in this case.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

WISS, Judge (concurring in part and in the result):

I agree with the majority's treatment of the specified issue and with its disposition of the first issue. I differ in some respects with the majority opinion as to the first issue, however, so I write separately to define those differences.

I

Appellant relies on *United States v. Thompson*, 22 USCMA 88, 46 CMR 88 (1972), and *United States v. Shropshire*, 34 MJ 757 (AFCMR 1992), to support his assertion that military policemen, by virtue of their professional training as peace officers, must be held to hold the rein on an emotional response to provoking works when other normal citizens would not be expected to do so. I do not agree that those cases can be read that broadly.

Words may be provoking for either of two general reasons: They may provoke a response because their hearer perceives them as a threat; or they may provoke a response because their hearer is insulted by their abusive nature and is emotionally incited to respond. *Thompson* was an instance in which the provoking words were threatening in nature; the circumstances, however, were such that the utterer was incapable of carrying out the threat—he was inside a jail cell and the hearer was outside the cell.

Thus, the words there were not provoking. The *reason* they were not provoking, however, is *not* particularly that their target was a military policeman; the *reason* is that the threat was uttered under circumstances in which the hearer knew the threat was hollow. Surely, even if an ordinary citizen, untrained as a peach officer, had heard the same words under the same circumstances in which the utterer clearly was physically restrained from backing up his treat, the result would not have been different.

In *Shropshire*, the words were both threatening and insulting. To the extent they were threatening, the same can be said as was just said regarding *Thompson:* The accused was handcuffed and clearly unable to back up his mouth with his fists. Further, the insulting and abusive words there were simply a reaction of a drunk and disorderly person being apprehended— a reaction that the court in *Shropshire* found to be a rather commonplace one facing police officers and, thus, not likely to provoke an emotional retaliation.

II

As the majority points out, appellant was not physically restrained in any way, as Shropshire and Thompson were, but that factor is not especially material where the words were not threatening. The words spewed out by appellant were provoking because they were abusive and insulting and, thus, posed the risk that a hearer— whether the military policeman who was their target or some bystander—would be incited to respond from emotion rather than from intellect.

Further, unlike the circumstances in *Shropshire*, the provoking words here were not just a normally expected angry reaction from a drunk and disorderly arrestee. The policeman here had already succeeded in defusing an argument between appellant and another club patron and had already convinced appellant to leave peacefully and return to this barracks. His mission had been professionally and quietly accomplished. Then, as the policeman re-

turned to his vehicle from the crowded club, appellant yelled his taunts. When an accused hurls abusive, insulting language at someone, a social risk is raised of an emotional, angry response in retaliation from either the target or some other hearer—and that risk exists whether the target is a policeman or any other citizen.

Under these circumstances, there certainly was "substantial evidence before the court [at the close of the prosecution's case on the merits] which, together with all justifiable inferences to be drawn therefrom, reasonably tend[ed] to establish every essential element of" using provoking speech. *See United States v. Tobin,* 17 USCMA 625, 628–29, 38 CMR 423, 426–27 (1968). Accordingly, I agree that the military judge properly denied the defense motion for a finding of not guilty.