# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Airman First Class ALAN J. KILLION, JR.**
**United States Air Force**

**ACM S32193**

**28 January 2015**

Sentence adjudged 10 October 2013 by SPCM convened at Osan Air Base, Republic of Korea.  Military Judge:  Matthew P. Stoffel.

Approved Sentence:  Bad-conduct discharge, confinement for 14 days, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant:  Major Matthew T. King.

Appellate Counsel for the United States:  Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Rule of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted, consistent with his pleas, of being drunk and disorderly and unlawfully entering the apartment of another, and, contrary to his pleas, of using provoking speech in violation of Articles 134 and 117, UCMJ, 10 U.S.C. §§ 934, 917.  A panel of officer and enlisted members sentenced him to a bad-conduct discharge, confinement for 14 days, reduction to E-1, and a reprimand.  The sentence was approved as adjudged.

1

The appellant raises four issues on appeal: (1) whether the evidence is factually and legally sufficient to sustain his conviction for using provoking speech, (2) whether his speech should be considered constitutionally protected under the First Amendment,[1] (3) whether the military judge's instructions regarding provoking speech were deficient, and (4) whether his sentence was inappropriately severe. Finding no error materially prejudicial to the substantial rights of the appellant, we affirm.

*Background*

After a night of excessive drinking, the appellant became belligerent and disorderly, accosting strangers with profane outbursts and resisting his friend's efforts to convince him to return home. Instead, the appellant jumped a fence and entered the apartment of a noncommissioned officer (NCO) he did not know, frightening the residents and neighbors who called security forces. The appellant was apprehended and evaluated on scene by emergency medical technicians who decided to transport him to the base emergency room.

Once there, while undergoing treatment for his altered mental state and injuries to his wrist and knee, the appellant lashed out at the medical providers both physically and verbally. Struggling against restraint by two security forces members and the medical staff, he verbally accosted several medical providers, calling one female nurse a "c[**]t" and medical technicians "Asian douchebags" and "ch[*]nk." This continued intermittently for over an hour, ending only after the medical staff determined it was necessary to sedate him.

*Factual and Legal Sufficiency*

The appellant argues that the evidence is factually and legally insufficient to support his conviction for provoking speech because there was no reasonable likelihood that trained medical providers would respond to his invective with violence. We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence

---

[1] U.S. CONST. amend. I.

constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324; *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F. 2000)).

The crime of using provoking speech under Article 117, UCMJ, is intended to preclude speech or gestures that, under the circumstances, would incite a violent or turbulent response. *See United States v. Davis*, 37 M.J. 152, 154 (C.M.A. 1993). The elements of this offense are:

> (1) That the accused wrongfully used words . . . toward a certain person;
>
> (2) That the words . . . used were provoking or reproachful; and
>
> (3) That the person toward whom the words were used was a person subject to the code.

*Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 42.b. (2012 ed.). Provoking or reproachful words are those "which are used in the presence of the person to whom they are directed and which a reasonable person would expect to induce a breach of the peace under the circumstances." *MCM*, Part IV, ¶ 42.c.(1).

In support of his argument, the appellant cites this court's holding in *United States v. Shropshire*, 34 M.J. 757 (A.F. Ct. Crim. App. 1992). In *Shropshire*, the appellant used racial epithets while being arrested and this court opined:

> They were directed towards a security policeman then in the execution of his duties -- who arrived at the scene *after* the clearly drunk and disorderly appellant had been apprehended and handcuffed by other security police personnel.
>
> . . . .

3

Appellant certainly expressed extremely insulting and repugnant comments; however, it is not reasonable to conclude that they would provoke the security policeman at whom they were directed to breach the peace. It is not uncommon for a person under apprehension to hurl taunts at the police. The police, in turn, are specifically trained to overlook verbal abuse in such situations and to maintain a professional demeanor.

Evaluating a charge of provoking speech, we find it appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen.

*Id.* at 757–58 (emphasis in original).

The appellant invites us to extend this rationale to medical providers in light of their training and experience in dealing with difficult patients. We decline to do so.

The facts of this case and *Shropshire* are distinguishable on several grounds. First, the duties of police officers, by their nature, often place them in an adversarial role with those whom they apprehend. We find no such analogous relationship between medical providers and their patients. Second, there was no ongoing struggle in *Shropshire* when the insulting speech was uttered. By contrast, the appellant here continued to struggle as he was uttering the language charged in this case. Third, in contrast to the fleeting insults against a particular officer described in *Shropshire,* the appellant's invective was persistent and cast a far wider net.

We also find the appellant's focus on whether the charged language would be likely to incite violence inappropriately narrow. Article 117, UCMJ, is crafted not solely to prevent violence, but also lesser disturbances of the peace. In *Davis*, our superior court expressly agreed with the Court of Military Review's finding that non-threatening words could be provoking "because of their tendency to lead to *quarrels, fights, or other disturbances*." *Davis*, 37 M.J. at 155 (emphasis added).

An examination into whether certain words are provoking or reproachful is a situation-dependent inquiry into all the circumstances of the matter, as words that may tend to induce a breach of the peace in one situation may not in another. Triers of fact and reviewing courts must consider the context in which the comments are made, the background between the speaker and listener, whether the comments are the sort normally to be expected by the listener, and the logical consequence of the comments.

In light of the appellant's prolonged physical struggle while in the emergency room and insults directed specifically and intentionally at several different providers, we

4

find the medical staff's forbearance not just beyond what we expect of ordinary providers but rather exceptional. The fact that the providers showed remarkable restraint does not change the characteristic of the remarks as provoking or reproachful. *See United States v. McHerrin*, 42 M.J. 672, 674 (Army Ct. Crim. App. 1995) (holding that "[i]t is immaterial that the victim, a professional noncommissioned officer, withstood the appellant's verbal abuse without breaching the peace").

Even if the medical providers were not subjectively provoked by the appellant's words, the test is objective—whether a reasonable person would expect them to induce a breach of the peace. We find the charged speech was provoking or reproachful. We have no doubt that a reasonable person observing the appellant's words would expect them to induce a breach of peace under the circumstances.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable fact finder could have found all the essential elements of using provoking speech beyond a reasonable doubt. Additionally, having reviewed the evidence in the record and making allowances for not having personally observed the witnesses, we find the evidence sufficient to prove the appellant's guilt beyond a reasonable doubt.

*First Amendment*

At trial, the appellant did not move for a dismissal or any other relief on the grounds that his speech was protected by the First Amendment. On appeal, however, he alleges that Article 117, UCMJ, is unconstitutional as applied to him because his statements were not "fighting words" and therefore constituted protected speech with no demonstrated real and palpable danger sufficient to outweigh his First Amendment rights.[2]

Whether a statute is constitutional as applied is an issue this court reviews de novo. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013) (citing *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012)). To determine if a statute is unconstitutional as applied, we conduct a "fact-specific inquiry." *Id.* However, where an appellant alleges constitutional errors for the first time on appeal, given the "presumption against the waiver of constitutional rights and [the] requirement that a waiver clearly establish[] . . . an intentional relinquishment of a known right or privilege," reviewing courts will often apply a plain error analysis rather than consider the matter waived. *Id.* (quoting *United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011)) (internal quotation marks omitted). Upon plain error review, to prove that a facially constitutional criminal statute is unconstitutional as applied, the appellant "must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress' and the President's determinations that his conduct be proscribed." *Id.*

---

[2] The appellant does not argue that Article 117, UCMJ, 10 U.S.C. § 917, is facially unconstitutional.

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. This Amendment protects the expression of ideas, even ideas that "the vast majority of society finds offensive or distasteful." *United States v. Wilcox*, 66 M.J. 442, 446 (C.A.A.F. 2008). "While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections." *Parker v. Levy*, 417 U.S. 733, 758 (1974). As a result, "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Id*. Nonetheless, our superior court has observed:

> First Amendment rights of civilians and members of the armed forces are not necessarily coextensive, but, in speech cases, our national reluctance to inhibit free expression dictates that the connection between the statements or publications involved and their effect on military discipline be closely examined. As in other areas, the proper balance must be struck between the essential needs of the armed services and the right to speak out as a free American. Necessarily, we must be sensitive to protection of "the principle of free thought -- not free thought for those who agree with us but freedom for the thought that we hate."

*United States v. Priest*, 45 C.M.R. 338, 343–44 (C.M.A. 1972) (quoting *United States v. Schwimmer*, 279 U.S. 644, 654–55 (1929)). Because of this balance, in the context of the First Amendment, our superior court has required the Government to demonstrate a "reasonably direct and palpable connection" between the military member's statements and the military mission or the military environment in order to punish conduct under Article 134, UCMJ. *Wilcox*, 66 M.J. at 449.

Even in the context of civilians, not all speech falls under the protection of the First Amendment. The Supreme Court has held that "certain well-defined and narrowly limited classes of speech" may be prevented and punished without raising a constitutional issue, including "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words -- those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942). Such utterances "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id*. at 572. A "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question. . . ." *Cantwell v. Connecticut*, 310 U.S. 296, 309–10 (1940). The proscription of "epithets likely to provoke the average person to retaliation, and

thereby cause a breach of the peace" does not "substantially or unreasonably impinge upon the privilege of free speech." *Chaplinsky*, 315 U.S. at 574.

Under this framework, the appellant's conviction presents no First Amendment concern even under a de novo review. Under a plain error review, this conclusion is all the more obvious, as the appellant's forfeiture of this issue leaves no "particular facts in the record" that demonstrate why his First Amendment interests in this situation should overcome the congressional determination to criminalize provoking speech. Viewed in the context of his entire course of conduct that evening, it is apparent that the appellant's comments constituted "epithets or personal abuse," words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *See Cantwell*, 310 U.S. at 309–10; *Chaplinsky*, 315 U.S. 571–72.

Moreover, even if the appellant's comments fell under the umbrella of First Amendment protection generally, there remains a direct and palpable connection between his speech and the military mission and military environment, allowing Congress to constitutionally prohibit the appellant's speech. The appellant chose to use vile words to insult fellow military members while they were performing their official duties. Under the facts of this case, we join our fellow service courts in finding that there is no First Amendment protection for provoking speech. *See United States v. Peszynski*, 40 M.J. 874, 879 (N.M.C.M.R. 1994) (setting aside the appellant's sexual harassment conviction on due process grounds, but stating that provoking words and other types of speech are "forms of expression whose criminal nature is easily determined"); *United States v. Peak*, 44 C.M.R. 658, 661–62 (C.G.C.M.R. 1971) (holding that Article 117, UCMJ, is not impermissibly vague such as to tread on First Amendment protections and "will withstand [an] attack on constitutional grounds").

*Instructions Regarding Provoking Speech*

The appellant further contends that the military judge erred in his instructions to the panel on the offense of using provoking speech. The appellant does not specifically argue that the military judge erred by failing to give the instruction proposed by trial defense counsel, but rather that the military judge failed to properly tailor the instruction from the Military Judges' Benchbook as required by Rule for Courts-Martial (R.C.M.) 920(e)(7).

This court reviews challenges to a military judge's instruction de novo. *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014). "Where an instructional error raises constitutional implications, we apply a 'harmless beyond a reasonable doubt' standard." *Id.* (citing *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006)). Because the Government does not argue that the alleged error was of a non-constitutional character, we apply that standard here. Under this standard, the Government must prove

7

beyond a reasonable doubt that any error did not contribute to the accused's conviction or sentence. *Id.*

R.C.M. 920(e)(7) dictates that instructions on findings shall include "[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given." In this case, trial defense counsel requested that the military judge instruct the panel:

> You are to consider the facts and circumstances of this case in determining if the words described in the specification of Charge III qualify as provoking speech. This is a situational [sic] dependent inquiry.
>
> Among these facts and circumstances, you may to [sic] consider the occupation, education, and training of the listener.
>
> For example, if the listener was a police officer or prison guard, you could consider specific law enforcement training the listener may have received in respect to dealing with insults, overlooking verbal abuse, and/or remaining professional in making a determination if the words used would cause a person in that circumstance to commit a violent or turbulent act in retaliation.
>
> You may also consider any unique circumstances in which the statements were made.
>
> For example, if the listener was a police officer or prison guard, you could consider if the speaker was confined to a cell or restrained by handcuffs in making a determination if the words used would cause a person in that circumstance to commit a violent turbulent act in retaliation.
>
> These circumstances and examples are merely illustrative and in no way exhaustive or limiting.

The military judge found that the law supporting such an instruction was not settled and instead instructed the members using the standardized instruction in the Military Judges' Benchbook:

> The test to apply is whether, under the facts and circumstances of this case, the words described in the specification would have caused an average person to react by immediately committing a

8

> violent or turbulent act in retaliation. Proof that a retaliatory act actually occurred is not required.

*See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3–42–1(d) (2010).

We find no error in the instructions provided by the military judge. First, we find that the instructions offered by trial defense counsel were not required under R.C.M. 920. The charged language was not directed at a police officer or prison guard, and tailored instructions as to those occupations were not required on the facts of this case. Nor do we find that any instruction with regard to specialized training for medical providers was necessary in light of our holding above. The listener's occupation is but one aspect of the offense, and "all the circumstances of a case must be considered in determining whether certain words are provoking." *United States v. Adams*, 49 M.J. 182, 185 (C.A.A.F. 1998). We find that the military judge's instruction was consistent with the case law and appropriate. Finding no error, we need not address any prejudicial effect.

*Sentence Appropriateness*

Finally, the appellant contends that his sentence was inappropriately severe. In reviewing sentence appropriateness, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Rangel*, 64 M.J. 678, 686 (A.F. Ct. Crim. App. 2007). We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

Applying these standards to the present case, we do not find a bad-conduct discharge inappropriately severe for the appellant's misconduct. The appellant suggests that he did nothing more than engage in a disorderly night of drinking. We disagree. The prosecution admitted substantial evidence of the disruption the appellant caused at the home of an innocent NCO and his family. He entered onto their patio while the NCO's wife was in the shower. Frightened by his banging and yelling, the wife grabbed her daughter and escaped to a neighbor's apartment. After gaining entry, the appellant overturned furniture and refused to leave. After receiving a panicked, incoherent call from his wife, the NCO had to rush home from a unit event, terrified that something awful had happened to his family. The occupant's 8-year-old daughter could not sleep alone for several nights because of the fear and insecurity his misconduct caused. Even after apprehension by security forces, the appellant was uncooperative and tried to kick a

military working dog. He impeded the paramedics' efforts to administer treatment, swatting at their hands and removing their equipment.

The appellant's disruptive conduct continued at the emergency room where it took six people approximately 40 minutes just to get the appellant into the bed. For approximately three hours, until the sedation set in, he continued to use foul and aggressive language towards the staff. His behavior was completely inconsistent with the good order and discipline that forms the foundation of military service. We do not find inappropriate a sentence that, in conjunction with a relatively short period of confinement, terminated the appellant's own military service in a punitive manner.

We have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial. We find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[3] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[3] We note the court-martial order (CMO) incorrectly noted the rank of one of the individuals subjected to the appellant's provoking language. The CMO lists MS as a "First Lieutenant," while the charge sheet indicated MS's rank to be "Captain" via a pen-and-ink change. While this clerical error is not prejudicial, we nonetheless order promulgation of a correct CMO. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).