*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Alan J. Killion Jr., Airman First Class
United States Air Force, Appellant

**No. 15-0425**
Crim. App. No. S32193

Argued October 7, 2015—Decided April 19, 2016

Military Judge: Matthew P. Stoffel

For Appellant: *Captain Johnathan D. Legg* (argued).

For Appellee: *Major Meredith L. Steer* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN and Judge DIAZ joined. Judge STUCKY filed a separate dissenting opinion. Judge OHLSON filed a separate dissenting opinion, in which Judge STUCKY joined.[1]

————————

Judge RYAN delivered the opinion of the Court.

Instructions given by a military judge "'must be sufficient to provide necessary guideposts for an 'informed deliberation' on the guilt or innocence of the accused.'" *United States v. Dearing*, 63 M.J. 478, 479 (C.A.A.F. 2006) (citation omitted); *see also* Rule for Courts-Martial (R.C.M.) 920(e)(1), (7). Words are considered provoking and a violation of Article 117, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917 (2012), when, inter alia, "a reasonable person would expect [them] to induce a breach of the peace under the circumstances." *Manual for Courts-Martial, United States* pt.

---

[1] Judge Albert Diaz, of the United States Court of Appeals for the Fourth Circuit, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

IV, para. 42.c.(1) (2012 ed.) (*MCM*). The provocative nature of speech for purposes of Article 117, UCMJ, thus depends in part upon the context in which they are spoken and the audience to whom they are addressed. *United States v. Thompson*, 22 C.M.A. 88, 90, 46 C.M.R. 88, 90 (1972).

In this case, the military judge instructed the members on the charged Article 117, UCMJ, offense based on the language of the Military Judges' Benchbook, which invites the members to determine whether "the [words] described in the specification would have caused an *average person* to react by immediately committing a violent or turbulent act in retaliation," Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 3, para. 3-42-1(d) (2014) [hereinafter Military Judges' Benchbook] (emphasis added). This was an incorrect statement of the law. A violation of Article 117, UCMJ, depends not on the likely reaction of the hypothetical average person but rather on the likely reaction of an objectively reasonable person in the position of the persons to whom the words are addressed.

Moreover, trial counsel exploited the military judge's instruction and expressly argued that the members should *not* consider surrounding circumstances, as "[n]one of that is relevant" to establishing how the average person would have reacted. We thus cannot say that the instruction did not mislead the members and contribute to Appellant's conviction for provoking speech.

## I.

Appellant was convicted, contrary to his pleas, by a special court-martial composed of officer and enlisted members, of one specification of using provoking speech in violation of Article 117, UCMJ. Appellant was also convicted, pursuant to his pleas, of one specification of being drunk and disorderly and one specification of unlawful entry, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant was sentenced to confinement for fourteen days, reduction to E-1, a reprimand, and a bad-conduct discharge. The convening authority approved the sentence.

The United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and sentence. We granted Appellant's petition to review the following issues:

> I.  Whether Appellant's conviction for provoking speech is legally insufficient because "under the circumstances" his words were not reasonably likely to provoke violence.[2]
>
> II.  Whether the military judge's instructions regarding provoking speech were deficient under the facts and circumstances of Appellant's case.

**II.**

The AFCCA characterized the background facts as follows:

> After a night of excessive drinking, [A]ppellant became belligerent and disorderly, accosting strangers with profane outbursts and resisting his friend's efforts to convince him to return home. Instead, [A]ppellant jumped a fence and entered the apartment of a noncommissioned officer (NCO) he did not know, frightening the residents and neighbors who called security forces. [A]ppellant was apprehended and evaluated on scene by emergency medical technicians who decided to transport him to the base emergency room.
>
> Once there, while undergoing treatment for his altered mental state and injuries to his wrist and knee, [A]ppellant lashed out at the medical providers both physically and verbally. Struggling against restraint by two security forces members and the medical staff, he verbally accosted several medical providers, calling one female nurse a "c[**]t" and medical technicians "Asian douche bags" and "ch[*]nk." This continued intermittently for over an hour,

---

[2] Given that we reverse the findings and sentence on the Article 117, UCMJ, offense on the ground that the AFCCA misapprehended the problematic nature of the instruction given and the argument made by trial counsel, we need not address the AFCCA's holding with respect to legal sufficiency. *See United States v. Forbes*, 61 M.J. 354, 360 (C.A.A.F. 2005).

ending only after the medical staff determined
it was necessary to sedate him.

*United States v. Killion*, No. ACM S32193, 2015 CCA LEXIS
28, at *2, 2015 WL 430323, at *1 (A.F. Ct. Crim. App. Jan.
28, 2015) (unpublished) (last two sets of brackets in original).

Further details are warranted. Appellant was physically
restrained with handcuffs and by two security force officers
at the emergency room. The medical staff placed a spit
guard on him, and Appellant was further restrained physically by the medical staff and security forces with passive
restraints attaching both arms and legs to the bed. The Air
Force medical staff consisted of a doctor, nurse, and technician.

There is no question that Appellant thrashed about and
used abusive, racist, and offensive language toward the medical staff while restrained. The medical staff, however, did
not consider responding to Appellant violently. One nurse
testified that she had never seen medical personnel become
violent with a verbally abusive patient, and a physician
stated that, while nurses and medical technicians occasionally have to act physically toward verbally abusive patients,
he had never seen a physician react violently toward a patient. The lab technician testified that it was not "common
practice" for medical staff to become violent toward patients.
The medical staff further testified that they were trained to
treat unruly patients and to maintain their composure. As
Captain JK, the attending physician, testified:

> So the training starts in medical school ....
> When we go into our clinical rotations, which is
> the second year, we go through scenarios, or
> you practice scenarios. We sit in with psychologists, psychiatrists, that kind of nature.
> We go through the offensive patient, the verbally abusive patients, the patients that are
> drug addicted — you know — how to relay information to difficult patients. So we do go
> through that training, and that training continues on in residency through attending physicians and other rotations that we take.

Defense counsel moved for an instruction regarding the definition of "provoking and reproachful" words in the context of the facts and circumstances of Appellant's case. Specifically, the defense requested an instruction that read as follows:

> You are to consider the facts and circumstances of this case in determining if the words described in the specification of Charge III qualify as provoking speech. This is a situational [sic] dependent inquiry.

> Among these facts and circumstances, you may to [sic] consider the occupation, education, and training of the listener.

> For example, if the listener was a police officer or prison guard, you could consider specific law enforcement training the listener may have received in respect to dealing with insults, overlooking verbal abuse, and/or remaining professional in making a determination if the words used would cause a person in that circumstance to commit a violent or turbulent act in retaliation.

> You may also consider any unique circumstances in which the statements were made.

> For example, if the listener was a police officer or prison guard, you could consider if the speaker was confined to a cell or restrained by handcuffs in making a determination if the words used would cause a person in that circumstance to commit a violent turbulent act in retaliation.

> These circumstances and examples are merely illustrative and in no way exhaustive or limiting.

The military judge denied this request, stating that he "[did] not believe the law is clear" on the appropriateness of defense counsel's proposed language.

Instead, the military judge drew his instructions from the Military Judges' Benchbook, telling the panel that:

> The test to apply is whether, under the facts and circumstances of this case, the words de-

scribed in the specification would have caused an *average person* to react by immediately committing a violent or turbulent act in retaliation. Proof that a retaliatory act actually occurred is not required.

(emphasis added); *see also* Military Judges' Benchbook ch. 3, para. 3-42-1(d).

During closing arguments, trial counsel told the members that they needed only to "decide whether this is [sic] provoking words for the average person." Trial counsel argued that the members should not consider surrounding circumstances, as "[n]one of that is relevant" to establishing how the average person would have reacted. In contrast, defense counsel detailed and focused on the relevant facts and circumstances of this particular case, stressing the medical professionals' training and experience and the fact that Appellant was restrained. The military judge did not clarify the correct standard.

### III.

On appeal, Appellant argued, as relevant to the granted issues, that the evidence was neither factually nor legally sufficient to sustain his conviction for using provoking speech and that the military judge's instructions regarding provoking speech were deficient. *Killion*, 2015 CCA LEXIS 28, at *1–2, 2015 WL 430323, at *1. The AFCCA held that the evidence was factually and legally sufficient because medical personnel are not subject to the Article 117, UCMJ, exception for police officers set forth in *United States v. Shropshire*, 34 M.J. 757 (A.F.C.M.R. 1992).[3] *Killion*, 2015 CCA LEXIS 28, at *5–6, 2015 WL 430323, at *2. It concluded that a reasonable person observing Appellant's words would expect the words to induce a breach of the peace under the circumstances, and the medical staff's response was "exceptional." *Killion*, 2015 CCA LEXIS 28, at *6–8, 2015

---

[3] The Air Force Court of Military Review held that it is "appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen," as "[t]he police … are specifically trained to overlook verbal abuse in such situations and to maintain a professional demeanor." *Shropshire*, 34 M.J. at 758.

WL 430323, at *3. The court distinguished Appellant's case from its own precedent in *Shropshire* because medical personnel, unlike police officers, are unused to aggressive language and adversarial situations. *Killion*, 2015 CCA LEXIS 28, at *4–6, 2015 WL 430323, at *2. For the same reasons, it concluded that the military judge did not err in the panel instructions he gave. *Killion*, 2015 CCA LEXIS 28, at *15–16, 2015 WL 430323, at *6. Alternatively, it concluded that the listener's profession "is but one aspect of the offense," so the failure to include the "under the circumstances" instruction and direct the members to consider the medical personnel's professions would not have changed the outcome of the case. *Killion*, 2015 CCA LEXIS 28, at *13–16, 2015 WL 430323, at *5–6.

## IV.

While military judges have some discretion in tailoring panel instructions, a military judge has a "duty to 'provide appropriate legal guidelines to assist the jury in its deliberations.'" *United States v. Wolford*, 62 M.J. 418, 419 (C.A.A.F. 2006) (quoting *United States v. McGee*, 1 M.J. 193, 195 (C.M.A. 1975)). "Failure to provide correct and complete instructions to the panel before deliberations begin may amount to a denial of due process." *Id.* (citation omitted). R.C.M. 920(e) expressly requires that instruction on findings include, inter alia, "[a] description of the elements," R.C.M. 920(e)(1), and "[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given." R.C.M. 920(e)(7).

Defense counsel requested alternative instructions emphasizing the importance of the occupation, education, and training of the listener. The military judge rejected the requested instructions out of hand — despite the fact that military judges have an affirmative obligation to properly instruct the members on the offense. *Dearing*, 63 M.J. at 482 n.9. While there are no "magic words" dictating when a party has sufficiently raised an error to preserve it for appeal, *see United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999), of critical importance is the specificity with which counsel makes the basis for his position known to the military judge. *See United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014)

(emphasizing the need for objections to be specific); *Cross v. Cleaver*, 142 F.3d 1059, 1068 (8th Cir. 1998); *Lang v. Texas & P. Ry. Co.*, 624 F.2d 1275, 1279 (5th Cir. 1980) (noting that the purpose of objecting is to provide an opportunity for errors to be corrected at trial).

While "requesting an instruction is ordinarily not sufficient to preserve a claim of error," *United States v. Maxwell*, 45 M.J. 406, 426 (C.A.A.F. 1996), this is not an ordinary case. Defense counsel's requested instruction, complete with citation to supporting legal authority, was specifically tailored to the circumstances presented in this case and gave the military judge the opportunity to correct any error in his panel instructions at trial. The military judge demonstrated his awareness of defense counsel's specific grounds for the alternative instruction, flatly disagreed with him, and there is no indication that further objection was likely to be successful. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008); *Sturgis v. Columbia Steel Fabricators, Inc.*, 974 F.2d 1343, 1343 (9th Cir. 1992) (unpublished). On these facts, the issue of instructional error was not forfeited.

Therefore, this Court reviews the adequacy of the military judge's panel instruction de novo. *See Wolford*, 62 M.J. at 420. "If instructional error is found, … [an appellant's] claims 'must be tested for prejudice under the standard of harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)). "It is also clear that it is solely the Government's burden to persuade the court that constitutional error is harmless beyond a reasonable doubt." *United States v. Bush*, 68 M.J. 96, 102 (C.A.A.F. 2009).

We agree with Appellant that the military judge's instructions were deficient and that the error was not harmless beyond a reasonable doubt.

### A.

A "provoking words" offense under Article 117, UCMJ, consists of three elements: (1) "the accused wrongfully used words or gestures toward a certain person"; (2) "the words or gestures used were provoking or reproachful"; and (3) "the

person toward whom the words or gestures were used was a person subject to the [UCMJ]." *MCM* pt. IV, para. 42.b.

Words are considered provoking when "a reasonable person would expect [them] to induce a breach of the peace under the circumstances." *MCM* pt. IV, para. 42.c.(1). As we have long held, the provocative nature of speech for the purposes of Article 117, UCMJ, depends upon the context in which the words are spoken and the audience to whom they are addressed. *Thompson*, 22 C.M.A. at 90, 46 C.M.R. at 90 (declining to find words provoking under the circumstances of that case, though recognizing that "[i]n some circumstances and to a different audience these same words and gestures might reasonably tend to precipitate a violent reaction").

"The rationale behind the prohibition [on using provoking words is] to serve as a check against 'manifestations of a hostile temper as, by inducing retaliation.'" *United States v. Davis*, 37 M.J. 152, 154 (C.M.A. 1993) (quoting William Winthrop, *Military Law and Precedents* 590 (2d ed., Government Printing Office 1920) (1895)); *see also United States v. Holiday*, 4 C.M.A. 454, 458, 16 C.M.R. 28, 32 (1954) ("[Article 117, UCMJ,] is designed to prevent the use of violence by the person to whom such speeches and gestures are directed…."). Thus, the reasonable reaction of the person to whom the words are addressed factors heavily into a determination of whether speech is provocative; the calculus is far more expansive than simply examining the volatility of the speaker's demeanor and the offensive nature of the words. *See, e.g.*, *Thompson*, 22 C.M.A. at 90, 46 C.M.R. at 90; *Shropshire*, 34 M.J. at 758.

In analyzing speech "under the circumstances," factors such as the occupation of the listener have always been deemed relevant to whether the speech is likely to cause a reasonable person to retaliate. *See, e.g., United States v. Adams*, 49 M.J. 182, 185 (C.A.A.F. 1998) (holding that the fact that speech was directed at a police officer should be considered and stating that "all the circumstances of a case must be considered in determining whether certain words are provoking"); *Thompson,* 22 C.M.A. at 90, 46 C.M.R. at 90 (focusing on the fact that "no reasonable guard under the circumstances" was likely to open the cell door to retaliate in

response to the accused's words); *Shropshire*, 34 M.J. at 758 (noting that it was "appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen").

Just as the profession and training of the person to whom the words are addressed impact the "under the circumstances" calculus, evidence that the speaker is restrained in some way is also relevant to the likelihood of retaliation by the reasonable person. *See, e.g.*, *Shropshire*, 34 M.J. at 758.

The above cases do not stand for the proposition that offensive speech directed at a listener with special training or a particular profession or by a speaker who is restrained may never be provocative under those circumstances. Rather, they serve only to emphasize the importance of considering case-specific facts in determining whether an objectively reasonable person could be expected to retaliate against words that, under other circumstances, could be provocative. *Thompson,* 22 C.M.A. at 90, 46 C.M.R. at 90.

## B.

In this case, evidence was adduced at trial that: (1) Appellant was restrained, first by security guards and handcuffs, then strapped to a hospital bed by both arms and legs; (2) Appellant was considered a patient; (3) it was clear to the medical staff that he was highly intoxicated; (4) the medical staff to whom the offensive words were directed had training in dealing with unruly and intoxicated patients; and (5) the medical staff had training in keeping their composure. Tellingly, while actual retaliation is not required under Article 117, UCMJ, the medical staff testified they did not consider responding physically to Appellant's verbal tirade and that such a reaction was virtually unheard of.

The problem with the military judge's instruction is not that he failed to instruct the panel as Appellant's counsel requested — an issue not before us. Rather, the military judge's instruction is deficient because while it did, in fact, direct the panel to consider "the facts and circumstances of this case," it effectively negated the focus on the actual cir-

cumstances of those who were the targets of Appellant's speech by misdirecting the members' focus to the reaction of a hypothetical "average person." Based on the evidence presented at trial, the question for the members was not what an average person might do under the circumstances but whether a reasonable medical care provider with the training described was likely to retaliate against a fully restrained, obviously intoxicated patient.

## C.

Nor can we say this error was harmless. Given the importance of the circumstances surrounding Appellant's speech in this case, the distinction between the "average person" and "reasonable person under the circumstances" standards was critical. Central to his defense, Appellant's counsel sought to argue that the elements of the offense were not met due to the "circumstances" of the speech, to include both the profession and training of the listeners and the fact that Appellant was restrained. *United States v. DiPaola*, 67 M.J. 98, 102–03 (C.A.A.F. 2008). In contrast, trial counsel effectively told the members that none of those circumstances mattered; it was how the average person would react that was at issue. In instructing the panel to employ an "average person" standard, the military judge's instruction directly bolstered the trial counsel's erroneous statement of the law, which de-emphasized any consideration of the circumstances. The deficient instruction thus "essentially undercut [a] defense theory and could very well have contributed to the finding of guilty," *United States v. Lewis*, 65 M.J. 85, 89 (C.A.A.F. 2007), thereby prejudicing the substantial rights of the accused. *See also Dearing*, 63 M.J. at 484; *cf. United States v. Easley*, 942 F.2d 405, 411 (6th Cir. 1991) (holding that a judge's conflicting instructions to the jury to apply an "average person" and a "reasonable person" standard in an obscenity prosecution was an error and not harmless beyond a reasonable doubt).

## V.

The decision of the United States Air Force Court of Criminal Appeals as to Charge III and its Specification and the sentence is reversed. The findings as to Charge III and its Specification are set aside and that charge and specifica-

tion are dismissed. The decision is affirmed as to the remaining charges. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence, or for a rehearing on sentence, if necessary.

Judge STUCKY, dissenting.

I concur with Judge Ohlson that the instructional error should be reviewed for plain error and, that under such review, Appellant failed to demonstrate error that was obvious, let alone prejudice. I write separately to suggest that, regardless of the outcome of this case, the Court should reconsider its provoking words jurisprudence.

Appellant was convicted of violating Article 117, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917 (2012): "Any person subject to this chapter who uses provoking or reproachful words or gestures towards any other person subject to this chapter shall be punished as a court-martial may direct." The seminal case interpreting Article 117 is *United States v. Thompson*, 22 C.M.A. 88, 46 C.M.R. 88 (1972). There, the appellant, who was in confinement, refused to get out of bed when instructed to do so. *Id.* at 89, 46 C.M.R. at 89. He told the stockade guard not to yell at him "'or I'll wring your _____ neck.'" *Id.* at 89, 46 C.M.R. at 89.

Without any real analysis, the Court of Military Appeals determined that the offense Congress created in Article 117 was analogous to the presidentially created offense of communicating a threat under Article 134, UCMJ, 10 U.S.C. § 934 (2012). *Id.* at 90, 46 C.M.R. at 90. It then evaluated the words spoken by Thompson using a substantially similar test to that which it had employed for analyzing words charged as communicating a threat: whether under the circumstances of the case a reasonable guard would expect the words to induce a breach of the peace. *Id.*, 46 C.M.R. at 90 (citing *United States v. Shropshire*, 20 C.M.A. 374, 43 C.M.R. 214 (1971)). The Court found the evidence legally insufficient to support the findings of guilty.

> In the present case, we similarly concern ourselves with threatening language and gestures employed by an accused so confined in a barred and screened cell that violence could not result unless Specialist Sawin, a trained custodian, saw fit to open the door and retaliate. As we noted in *Shropshire*, no reasonable guard under the circumstances was likely to do so and Sawin in fact stated there was no intention on his part to take action. The circumstances of the accused's confinement, the words used, and Sawin's attitude all dictate the conclusion that

there was no reasonable tendency that the accused's words would provoke a breach of the peace. Accordingly, we find the evidence insufficient to support the findings of guilty.[1]

*Id.*, 46 C.M.R. at 90.

The offense of using provoking words, however, is not analogous to communicating a threat, except in the general sense that both require an accused to use words or gestures to address another person. The offense of communicating a threat focuses on the harm done to the person to whom the threat is communicated; it puts her in fear for her safety. Using provoking words under Article 117, on the other hand, is a military offense; both the speaker and the person to whom the words are directed must be subject to the UCMJ. The prohibition on using provoking words towards another member of the armed forces is of ancient origin. *See id.* at 89, 46 C.M.R. at 89. Its purpose "evidently is to check such manifestations of a hostile temper as, by inducing retaliation, might lead to duels or other disorders." William Winthrop, *Military Law and Precedents* 590 (2d ed., Government Printing Office 1920) (1895); *see Thompson*, 22 C.M.A. at 89, 46 C.M.R. at 89. In other words, its goal is to prevent affrays, preserve good order and discipline, and thereby promote mission accomplishment.

In my judgment, we should not be reviewing convictions for using provoking words by looking at the expected reaction of a reasonable person under all the facts and circumstances. A reasonable person is one "who exercises the degree of attention, knowledge, intelligence, and judgment

---

[1] This Court appears to equate the term "breach of the peace" with assaults or fighting. The term is broader; it refers to "disturbance of the public tranquility, or their tendency to cause such a disturbance." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 477 (3d ed. 1982); *see Manual for Courts-Martial, United States* (*MCM*) pt. IV, ¶ 41.c.(2) (2012 ed.) ("Loud speech and unruly conduct may also constitute a breach of the peace by the speaker. A speaker may also by [sic] guilty of causing a breach of the peace if the speaker uses language which can reasonably be expected to produce a violent or turbulent response and a breach of the peace results.").

that society requires of its members for the protection of their own and of others' interests." *Black's Law Dictionary* 1457 (10th ed. 2014). A reasonable person normally does not react to provoking words. After all, most of us learned as children that "sticks and stones may break my bones but words will never hurt me."

Furthermore, I disagree with the Court's holding that we should give special consideration to the military occupational specialty, training, and experience of the person to whom the provoking words are directed. Such consideration is based on the faulty premise that military members in certain career fields have the discipline not to respond to provoking words, while others do not. From the time a recruit enters basic training, discipline is the primary focus of preparation for service. It is the sine qua non of an effective military fighting force.

To give Article 117 its full meaning, courts should not look to whether the words have a tendency to provoke the specific individual to whom the words were directed into assaulting the speaker or breaching the peace. The suggested test raises the spectre of an unworkable multiplication of standards, based on the supposed behavior of a "reasonable" aircraft mechanic, yeoman, master-at-arms, chaplain's assistant, or what have you. Instead, the focus of this Court's review should be on the *tendency* of such language to cause a disturbance and affect the esprit of the military unit and the military as a whole.

The Court's jurisprudence also leads to incongruent results. For example, compare the use of the same provoking words by a 130-pound E-1 and a 200-pound E-6 special operator. The tendency for a breach of the peace might be considerably different depending on which role these individuals played. Do we really want to suggest that because the 130-pound E-1 might be considerably less likely to try to retaliate against the special operator than vice versa that the same words spoken in similar situations should lead to a different outcome? I do not. Under either case, the provoking words have a tendency to affect the military mission and the individuals' service to that mission.

In *Thompson*, the Court cited the leading Supreme Court case of *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), for the proposition that Article 117 did not violate an accused's right to free speech. 22 C.M.A. at 90, 46 C.M.R. at 90. Strangely, it did not consider the rest of the Supreme Court's analysis of the state statute, which was very similar to Article 117. Chaplinsky was distributing literature on the streets "denouncing all religion as 'a racket.'" *Chaplinsky,* 315 U.S. at 570. A town marshal told citizens who complained that Chaplinsky was within his rights but "warned Chaplinsky that the crowd was getting restless." *Id.* Later, a disturbance broke out and a police officer tried to escort Chaplinsky to the police station. *Id.* When they encountered the town marshal, he repeated his warning to Chaplinsky, who responded by saying, "'You are a God damned racketeer' and a 'damned Fascist and the whole government of Rochester are Fascists or agents of Fascists.'"[2] *Id.* at 569–70.

The Supreme Court did not suggest that the appropriate standard for conviction was whether a reasonable *government* official was likely to breach the peace because of the epithets. Nor did it look to the training or experience of the town marshal to whom the words were spoken. Instead it determined "that the appellations 'damn racketeer' and 'damn Fascist' are epithets likely to provoke the *average* person to retaliation, and thereby cause a breach of the peace." *Id.* at 574 (emphasis added).

Thus, I conclude that in determining whether an appellant was guilty of using provoking words, we should consider the situation in which the words were used rather than the particular characteristics of the person to whom the words were addressed, such as military occupational specialty, size, training, rank, or experience. Instead, the focus should be on whether, in the situation, the words or gestures had a tendency to provoke an average military member to breach the peace, whether by assault or causing a disturbance.

---

[2] While today such words may not be viewed as especially provoking, Chaplinsky uttered the words while the United States was at war with Fascist Italy and Germany.

Judge OHLSON, with whom Judge STUCKY joins, dissenting.

The majority concludes that the military judge's instruction was erroneous in its use of the term "average person" instead of "reasonable person" and reverses on this basis. However, in my view, the majority reaches the wrong result, primarily by employing an incorrect standard of review. Therefore, I would affirm the decision below and I respectfully dissent.

Towards the end of the trial, the military judge asked, "Does either side have any objections to the instructions that I propose to give?" Both parties answered "No." I therefore conclude that Appellant did not preserve his challenge to the instruction at issue in this case.[1] Accordingly, contrary to the majority's approach, I believe that plain error is the proper lens for review. I further conclude for the reasons stated below that there was no plain error in this case.

The majority states that the military judge "negated the focus on the actual circumstances of those who were the targets of Appellant's speech by misdirecting the members' focus to the reaction of a hypothetical 'average person.'" *United States v. Killion,* __ M.J. __ (10–11) (C.A.A.F. 2016). It is true that the military judge instructed the panel members to focus on how an "average person" might have responded to Appellant's words rather than on how a "reasonable person" or a "reasonable medical care provider with the training described [at trial]" might have responded. *Id.* at __ (11). However, to place this instruction in its appropriate context, I note that the military judge instructed the members as follows: "'The test to apply is whether, *under the facts and circumstances of this case*, the words described … would have caused an *average person* to react by immediately committing a violent or turbulent act in retaliation.'" *Id.* at __ (5–6)

---

[1] It is well settled that in order to preserve instructional error, "[t]here must be an objection no later than after the instructions are given and before the court is closed for deliberations, stating that the instructions did not adequately cover the matters raised in the requested instruction." *United States v. Maxwell*, 45 M.J. 406, 426 (C.A.A.F. 1996); *accord United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013).

(first emphasis added) (second emphasis in original). In my view, this instruction adequately conveyed to the panel members that they were required to envision this hypothetical "average person" as a member of the listener's profession who had undergone the listener's specialized training, and that they were required to consider the fact that Appellant was, for the most part, restrained during his tirade. Therefore, in this particular context, I conclude that any distinctions made by the majority between "an average person" and a "reasonable medical care provider with the training described [at trial]" are inconsequential. Accordingly, I do not find a sufficient basis to conclude that the military judge's instruction constituted plain error.[2]

## CONCLUSION

Because the military judge's instructions did not constitute plain error, and because the CCA correctly rejected Appellant's legal sufficiency challenges, I conclude that Appellant's conviction should be affirmed. Accordingly, I respectfully dissent.

---

[2] This point is further emphasized by the majority's harmlessness inquiry, which focuses on the point that "the military judge's instruction directly bolstered the trial counsel's erroneous statement of the law, which de-emphasized any consideration of the circumstances." *Killion,* __ M.J. at __ (11). Importantly, however, the granted issue speaks to whether the instruction was *itself* erroneous—not whether counsel's closing argument tainted the instruction. Because the instruction that was given by the military judge accurately focused the panel on the "facts and circumstances of this case," trial counsel's improper suggestion to the contrary is in no way dispositive of the granted issue. *See United States v. Custis*, 65 M.J. 366, 372 (C.A.A.F. 2007) ("We presume that the panel followed the instructions given by the military judge."); *United States v. Thompson*, 63 M.J. 228, 232 (C.A.A.F. 2006) (same); *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (same).