Judge RYAN
delivered the opinion of the Court.
Instructions given by a military judge “ ‘must be sufficient to provide necessary guideposts for an ‘informed deliberation’ on the guilt or innocence of the accused.’” United States v. Dearing, 63 M.J. 478, 479 (C.A.A.F.2006) (citation omitted); see also Rule for Courts-Martial (R.C.M.) 920(e)(1), (7). Words are considered provoking and a violation of Article 117, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917 (2012), when, inter alia, “a reasonable person would expect [them] to induce a breach of the peace under the circumstances.” Manual for Courts-Martial, United States pt. IV, para. 42.c.(1) (2012 ed.) (MCM). The provocative nature of speech for purposes of Article 117, UCMJ, thus depends in part upon the context in which they are spoken and the audience to whom they are addressed. United States v. Thompson, 22 C.M.A. 88, 90, 46 C.M.R. 88, 90 (1972).
In this case, the military judge instructed the members on the charged Article 117, UCMJ, offense based on the language of the Military Judges’ Benchbook, which invites the members to determine whether “the [words] described in the specification would have caused an average person to react by immediately committing a violent or turbulent act in retaliation,” Dep’t of the Army, Pam. 27-9, Legal Services, Military Judges’ Benchbook eh. 3, para. 3—42—1(d) (2014) [hereinafter Military Judges’ Benchbook] (emphasis added). This was an incorrect statement of the law. A violation of Article 117, UCMJ, depends not on the likely reaction of the hypothetical average person but rather on the likely reaction of an objectively reasonable person in the position of the persons to whom the words are addressed.
Moreover, trial counsel exploited the military judge’s instruction and expressly argued that the members should not consider surrounding circumstances, as “[n]one of that is relevant” to establishing how the average person would have reacted. We thus cannot say that the instruction did not mislead the members and contribute to Appellant’s conviction for provoking speech.
I.
Appellant was convicted, contrary to his pleas, by a special court-martial composed of officer and enlisted members, of one specification of using provoking speech in violation of Article 117, UCMJ. Appellant was also convicted, pursuant to his pleas, of one specification of being drunk and disorderly and one specification of unlawful entry, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant was sentenced to confinement for fourteen days, reduction to E-l, a reprimand, and a bad-conduct discharge. The convening authority approved the sentence.
The United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and sentence. We granted Appellant’s petition to review the following issues:
I. Whether Appellant’s conviction for provoking speech is legally insufficient because “under the circumstances” his words were not reasonably likely to provoke violence.[2]
II. Whether the military judge’s instructions regarding provoking speech were deficient under the facts and circumstances of Appellant’s ease.
II.
The AFCCA characterized the background facts as follows:
After a night of excessive drinking, [A]p-pellant became belligerent and disorderly, accosting strangers with profane outbursts and resisting his friend’s efforts to convince him to return home. Instead, [Appellant jumped a fence and entered the *212 apartment of a noncommissioned officer (NCO) he did not know, frightening the residents and neighbors who called security forces. [A]ppellant was apprehended and evaluated on scene by emergency medical technicians who decided to transport him to the base emergency room.
Once there, while undergoing treatment for his altered mental state and injuries to his wrist and knee, [A]ppellant lashed out at the medical providers both physically and verbally. Struggling against restraint by two security forces members and the medical staff, he verbally accosted several medical providers, calling one female nurse a “c[**]t” and medical technicians “Asian douche bags” and “ch[*]nk.” This continued intermittently for over an hour, ending only after the medical staff determined it was necessary to sedate him.
United States v. Killion, No. ACM S32193, 2015 CCA LEXIS 28, at *2, 2015 WL 430323, at *1 (A.F.Ct.Crim.App. Jan. 28, 2015) (unpublished) (last two sets of brackets in original).
Further details are warranted, Appellant was physically restrained with handcuffs and by two security force officers at the emergency room. The medical staff placed a spit guard on him, and Appellant was further restrained physically by the medical staff and security forces with passive restraints attaching both arms and legs to the bed. The Air Force medical staff consisted of a doctor, nurse, and technician.
There is no question that Appellant thrashed about and used abusive, racist, and offensive language toward the medical staff while restrained. The medical staff, however, did not consider responding to Appellant violently. One nurse testified .that she had never seen medical personnel become violent with a verbally abusive patient, and a physician stated that, while nurses and medical technicians occasionally have to act physically toward verbally abusive patients, he had never seen a physician react violently toward a patient. The lab technician testified that it was not “common practice” for medical staff to become violent toward patients. The medical staff further testified that they were trained to treat unruly patients and to maintain their composure. As Captain JK, the attending physician, testified:
So the training starts in medical school.... When we go into our clinical rotations, which is the second year, we go through scenarios, or you practice scenarios. We sit in with psychologists, psychiatrists, that kind of nature. We go through the offensive patient, the verbally abusive patients, the patients that are drug addicted—you know—how to relay information to difficult patients. So we do go through that training, and that training continues on in residency through attending physicians and other rotations that we take.
Defense counsel moved for an instruction regarding the definition of “provoking and reproachful” words in the context of the facts and circumstances of Appellant’s case. Specifically, the defense requested an instruction that read as follows:
You are to consider the facts and circumstances of this case in determining if the words described in the specification of Charge III qualify as provoking speech. This is a situational [sic] dependent inquiry.
Among these facts and circumstances, you may to [sic] consider the occupation, education, and training of the listener.
For example, if the listener was a police officer or prison guard, you could consider specific law enforcement training the listener may have received in respect to dealing with insults, overlooking verbal abuse, and/or remaining professional in making a determination if the words used would cause a person in that circumstance to commit a violent or turbulent act in retaliation.
You may also consider any unique circumstances in which the statements were made.
For example, if the listener was a police officer or prison guard, you could consider if the speaker was confined to a cell or restrained by handcuffs in making a determination if the words used would cause a person in that circumstance to commit a violent turbulent act in retaliation.
*213 These circumstances and examples are merely illustrative and in ho way exhaustive or limiting.
The military judge denied this request, stating that he “[did] not believe the law is clear” on the appropriateness of defense counsel’s proposed language.
Instead, the military judge drew his instructions from the Military Judges’ Bench-book, telling the panel that:
The test to apply is whether, under the facts and circumstances of this case, the words described in the specification would have caused an average person to react by immediately committing a violent or turbulent act in retaliation. Proof that a retaliatory act actually occurred is not required.
(emphasis added); see also Military Judges’ Benehbook eh. 3, para. 3-42-l(d).
During closing arguments, trial counsel told the members that they needed only to “decide whether this is [sic] provoking words for the average person.” Trial counsel argued that the members should not consider surrounding circumstances, as “[n]one of that is relevant” to establishing how the average person would have reacted. In contrast, defense counsel detailed and focused on the relevant facts and circumstances of this particular case, stressing the medical professionals’ training and experience and the fact that Appellant was restrained. The military judge did not clarify the correct standard.
III.
On appeal, Appellant argued, as relevant to the granted issues, that the evidence was neither factually nor legally sufficient to sustain his conviction for using provoking speech and that the military judge’s instructions regarding provoking speech were deficient. Killion, 2015 CCA LEXIS 28, at *1-2, 2015 WL 430323, at *1. The AFCCA held that the evidence was factually and legally sufficient because medical personnel are not subject to the Article 117, UCMJ, exception for police officers set forth in United States v. Shropshire, 34 M.J. 757 (A.F.C.M.R.1992).[3] Killion, 2015 CCA LEXIS 28, at *5-6, 2015 WL 430323, at *2. It concluded that a reasonable person observing Appellant’s words would expect the words to induce a breach of the peace under the circumstances, and the medical staffs response was “exceptional.” Killion, 2015 CCA LEXIS 28, at *6-8, 2015 WL 430323, at *3. The court distinguished Appellant’s case from its own precedent in Shropshire because medical personnel, unlike police officers, are unused to aggressive language and adversarial situations. Killion, 2015 CCA LEXIS 28, at *4-6, 2015 WL 430323, at *2. For the same reasons, it concluded that the military judge did not err in the panel instructions he gave. Killion, 2015 CCA LEXIS 28, at *15-16, 2015 WL 430323, at *6. Alternatively, it concluded that the listener’s profession “is but one aspect of the offense,” so the failure to include the “under the circumstances” instruction and direct the members to consider the medical personnel’s professions would not have changed the outcome of the case. Killion, 2015 CCA LEXIS 28, at *13-16, 2015 WL 430323, at *5-6.
IV.
While military judges have some discretion in tailoring panel instructions, a military judge has a “duty to ‘provide appropriate legal guidelines to assist the jury in its deliberations.’” United States v. Wolford, 62 M.J. 418, 419 (C.A.A.F.2006) (quoting United States v. McGee, 1 M.J. 193, 195 (C.M.A. 1975)), “Failure to provide correct and complete instructions to the panel before deliberations begin may amount to a denial of due process.” Id (citation omitted). R.C.M. 920(e) expressly requires that instruction on findings include, inter alia, “[a] description of the elements,” R.C.M. 920(e)(1), and “[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military *214 judge determines, sua sponte, should be given.” R.C.M. 920(e)(7).
Defense counsel requested alternative instructions emphasizing the importance of the occupation, education, and training of the listener. The military judge rejected the requested instructions out of hand—despite the fact that military judges have an affirmative obligation to properly instruct the members on the offense. Dearing, 63 M.J. at 482 n. 9. While there are no “magic words” dictating when a party has sufficiently raised an error to preserve it for appeal, see United States v. Smith, 50 M.J. 451, 456 (C.A.A.F.1999), of critical importance is the specificity with which counsel makes the basis for his position known to the military judge. See United States v. Payne, 73 M.J. 19, 23 (C.A.A.F.2014) (emphasizing the need for objections to be specific); Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir.1998); Lang v. Texas & P. Ry. Co., 624 F.2d 1275, 1279 (5th Cir.1980) (noting that the purpose of objecting is to provide an opportunity for errors to be corrected at trial).
While “requesting an instruction is ordinarily not sufficient to preserve a claim of error,” United States v. Maxwell, 45 M.J. 406, 426 (C.A.A.F.1996), this is not an ordinary case. Defense counsel’s requested instruction, complete with citation to supporting legal authority, was specifically tailored to the circumstances presented in this case and gave the military judge the opportunity to correct any error in his panel instructions at trial. The military judge demonstrated his awareness of defense counsel’s specific grounds for the alternative instruction, flatly disagreed with him, and there is no indication that further objection was likely to be successful. See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1359 (Fed.Cir.2008); Sturgis v. Columbia Steel Fabricators, Inc., 974 F.2d 1343, 1343 (9th Cir.1992) (unpublished). On these facts, the issue of instructional error was not forfeited.
Therefore, this Court reviews the adequacy of the military judge’s' panel instruction de novo. See Wolford, 62 M.J. at 420. “If instructional error is found, ... [an appellant’s] claims ‘must be tested for prejudice under the standard of harmless beyond a reasonable doubt.’” Id. (quoting United States v. Kreutzer, 61 M.J. 293, 298 (C.A.A.F.2005)). “It is also clear that it is solely the Government’s burden to persuade the court that constitutional error is harmless beyond a reasonable doubt.” United States v. Bush, 68 M.J. 96, 102 (C.A.A.F.2009).
We agree with Appellant that the military judge’s instructions were deficient and that the error was not harmless beyond a reasonable doubt.
A.
A “provoking word's” offense under Article 117, UCMJ, consists of three elements: (1) “the accused wrongfully used words or gestures toward a certain person”; (2) “the words or gestures used were provoking or reproachful”; and (3) “the person toward whom the words or gestures were used was a person subject to the [UCMJ].” MCM pt. IV, para. 42.b.
Words are considered provoking when “a reasonable person would expect [them] to induce a breach of the peace' under the circumstances.” MCM pt. IV, para. 42.c.(l). As we have long held, the provocative nature of speech for the purposes of Article 117, UCMJ, depends upon the context in which the words- are spoken and the audience to whom they are addressed. Thompson, 22 C.M.A. at 90, 46 C.M.R. at 90 (declining to find words provoking under the circumstances of that case, though recognizing that “[i]n some circumstances and to a different audience these same words and gestures might reasonably tend to precipitate a violent reaction”).
“The rationale behind the prohibition [on using provoking words is] to serve as a check against ‘manifestations of a hostile temper as, by inducing retaliation.’” United States v. Davis, 37 M.J. 152, 154 (C.M.A.1993) (quoting William Winthrop, Military Law and Precedents 590 (2d ed., Government Printing Office 1920) (1895)); see also United States v. Holiday, 4 C.M.A. 454, 458, 16 C.M.R. 28, 32 (1954) (“[Article 117, UCMJ,] *215 is designed to prevent the use of violence by the person to whom such speeches and gestures are directed_”). Thus, the reasonable reaction of the person to whom the words are addressed factors heavily into a determination of whether speech is provocative; the calculus is far more expansive than simply examining the volatility of the speaker’s demeanor and the offensive nature of the words. See, e.g., Thompson, 22 C.M.A. at 90, 46 C.M.R. at 90; Shropshire, 34 M.J. at 758.
In analyzing speech “under the circumstances,” factors such as the occupation of the listener have always been deemed relevant to whether the speech is likely to cause a reasonable person to retaliate. See, e.g., United States v. Adams, 49 M.J. 182, 185 (C.A.A.F.1998) (holding that the fact that speech was directed at a police officer should be considered and stating that “all the circumstances of a case must be considered in determining whether certain words are provoking”); Thompson, 22 C.M.A. at 90, 46 C.M.R. at 90 (focusing on the fact that “no reasonable guard under the circumstances” was likely to open the cell door to retaliate in response to the accused’s words); Shropshire, 34 M.J. at 758 (noting that it was “appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen”).
Just as the profession and training of the person to whom the words are addressed impact the “under the circumstances” calculus, evidence that the speaker is restrained in some way is also relevant to the likelihood of retaliation by the reasonable person. See, e.g., Shropshire, 34 M.J. at 758.
The above cases do not stand for the proposition that offensive speech directed at a listener with special training or a particular profession or by a speaker who is restrained may never be provocative under those circumstances. Rather, they serve only to emphasize the importance of considering case-specific facts in determining whether an objectively reasonable person could be expected to retaliate against words that, under other circumstances, could be provocative. Thompson, 22 C.M.A. at 90, 46 C.M.R. at 90.
B.
In this case, evidence was adduced at trial that: (1) Appellant was restrained, first by security guards and handcuffs, then strapped to a hospital bed by both arms and legs; (2) Appellant was considered a patient; (3) it was clear to the medical staff that he was highly intoxicated; (4) the medical staff to whom the offensive words were directed had training in dealing with unruly and intoxicated patients; and (5) the medical staff had training in keeping their composure. Tellingly, while actual retaliation is not required under Article 117, UCMJ, the medical staff testified they did not consider responding physically to Appellant’s verbal tirade and that such a reaction was virtually unheard of.
The problem with the military judge’s instruction is not that he failed to instruct the panel as Appellant’s counsel requested—an issue not before us.- Rather, the military judge’s instruction is deficient because while it did, in fact, direct the panel to consider “the facts and circumstances of this ease,” it effectively negated the focus on the actual circumstances of those who were the targets of Appellant’s speech by misdirecting the members’ focus to the reaction of a hypothetical “average person.” Based on the evidence presented at trial, the question for the members was not what an average person might do under the circumstances but whether a reasonable medical care provider with the training described was likely to retaliate against a fully restrained, obviously intoxicated patient.
C.
Nor can we say this error was harmless. Given the importance of the circumstances surrounding Appellant’s speech in this case, the distinction between the “average person” and “reasonable person under the circumstances” standards was critical. Central to his defense, Appellant’s counsel sought to argue that the elements of the offense were not met due to the “circumstances” of the speech, to include both the profession and training of the listeners and the fact that Appellant was restrained. *216 United States v. DiPaola, 67 M.J. 98, 102-03 (C.A.A.F.2008). In contrast, trial counsel effectively told the members that none of those circumstances mattered; it was how the average person would react that was at issue. In instructing the panel to employ an “average person” standard, the military judge’s instruction directly bolstered the trial counsel’s erroneous statement of the law, which de-emphasized any consideration of the circumstances. The deficient instruction thus “essentially undercut [a] defense theory and could very well have contributed to the finding of guilty,” United States v. Lewis, 65 M.J. 85, 89 (C.A.A.F.2007), thereby prejudicing the substantial rights of the accused. See also Dearing, 63 M.J. at 484; cf. United States v. Easley, 942 F.2d 405, 411 (6th Cir.1991) (holding that a judge’s conflicting instructions to the jury to apply an “average person” and a “reasonable person” standard in an obscenity prosecution was an error and not harmless beyond a reasonable doubt).
V.
The decision of the United States Air Force Court of Criminal Appeals as to Charge III and its Specification and the sentence is reversed. The findings as to Charge III and its Specification are set aside and that charge and specification are dismissed. The decision is affirmed as to the remaining charges. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence, or for a rehearing on sentence, if necessary,

. Given that we reverse the findings and sentence on the Article 117, UCMJ, offense on the ground that the AFCCA misapprehended the problematic nature of the instruction given and the argument made by trial counsel, we need not address the AFCCA's holding with respect to legal sufficiency. See United States v. Forbes, 61 M.J. 354, 360 (C.A.A.F.2005).

. The Air Force Court of Military Review held that it is "appropriate to apply a separate standard to words directed at a policeman by a handcuffed suspect under apprehension, than to the same words said to an ordinary citizen,” as "[t]he police ... are specifically trained to overlook verbal abuse in such situations and to maintain a professional demeanor.” Shropshire, 34 M.J. at 758.