Judge STUCKY,
dissenting.
I concur with Judge Ohlson that the instructional error should be reviewed for plain error and, that under such review, Appellant failed to demonstrate error that was obvious, let alone prejudice. I write separately to suggest that, regardless of the outcome of this case, the Court should reconsider its provoking words jurisprudence.
Appellant was convicted of violating Article 117, Uniform Code of .Military Justice (UCMJ), 10 U.S.C. § 917 (2012): “Any person subject to this chapter who uses provoking or reproachful words or gestures towards any other person subject to this chapter shall be punished as a court-martial may direct.” The seminal ease interpreting Article 117 is United States v. Thompson, 22 C.M.A. 88, 46 C.M.R. 88 (1972). There, the appellant, who was in confinement, refused to get out of bed when instructed to do so. Id. at 89, 46 C.M.R. at 89. He told the stockade guard not to yell at him “ ‘or I’ll wring your_ neck.’ ” Id. at 89, 46 C.M.R. at 89.
Without any real analysis, the Court of Military Appeals determined that the offense Congress created in Article 117 was analogous to the presidentially created offense of communicating a threat under Article 134, UCMJ, 10 U.S.C. § 934 (2012). Id. at 90, 46 C.M.R. at 90. It then evaluated the words spoken by Thompson using a substantially similar test to that which it had employed for analyzing words charged as communicating a threat: whether under the circumstances of the case a reasonable guard would expect the words to induce a breach of the peace. Id., 46 C.M.R. at 90 (citing United States v. Shropshire, 20 C.M.A. 374, 43 C.M.R. 214 (1971)). The Court found the evidence legally insufficient to support the findings of guilty.
In the present case, we similarly concern ourselves with threatening language and gestures employed by an accused so confined in a barred and screened cell that violence could not result unless Specialist Sawin, a trained custodian, saw fit to open the door and retaliate. As we noted in Shropshire, no reasonable guard under the circumstances was likely to do so and Saw-in in fact stated there was no intention on his part to take action. The circumstances of the accused’s confinement, the words used, and Sawiris attitude all dictate the conclusion that there was no reasonable tendency that the accused’s words would provoke a breach of the peace. Accordingly, we find the evidence insufficient to support the findings of guilty.[1]
Id., 46 C.M.R. at 90.
The offense of using provoking words, however, is not analogous to communicating *217 a threat, except in the general sense that both require an accused to use words or gestures to address another person. The offense of communicating a threat focuses on the harm done to the person to whom the threat is communicated; it puts her in fear for her safety. Using provoking words under Article 117, on the other hand, is a military offense; both the speaker and the person to whom the words are directed must be subject to the UCMJ.. The prohibition on using provoking words towards another member of the armed forces is of ancient origin. See id. at 89, 46 C.M.R. at 89. Its purpose “evidently is to check such manifestations of a hostile temper as, by inducing retaliation, might lead to duels or other disorders.” William Winthrop, Military Law and Precedents 590 (2d ed., Government Printing Office 1920) (1895); see Thompson, 22 C.M.A. at 89, 46 C.M.R. at 89. In other words, its goal is to prevent affrays, preserve good order and discipline, and thereby promote mission accomplishment.
In my judgment, we should not be reviewing convictions for using provoking words by looking at the expected reaction of a reasonable person under all the facts and circumstances. A reasonable person is one “who exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of others’ interests.” Black’s Law Dictionary 1457 (10th ed. 2014). A reasonable person normally does not react to provoking words, After all, most of us learned as children that “sticks and stones may break my bones but words will never hurt me.”
Furthermore, I disagree with the Court’s holding that we should give special consideration to the military occupational specialty, training, and experience of the person to whom the provoking words are directed. Such consideration is based on the faulty premise that military members in certain career fields have the discipline not to respond to provoking words, while others do not. From the time a recruit enters basic training, discipline is the primary focus of preparation for service. It is the sine qua non of an effective military fighting force.
To give Article 117 its full meaning, courts should not look to whether the words have a tendency to provoke the specific individual to whom the words were directed into assaulting the speaker or breaching the peace. The suggested test raises the spectre of an unworkable multiplication of standards, based on the supposed behavior of a “reasonable” aircraft mechanic, yeoman, master-at-arms, chaplain’s assistant, or what have you. Instead, the focus of this Court’s review should be on the tendency of such language to cause a disturbance and affect the esprit of the military unit and the military as a whole.
The Court’s jurisprudence also leads to incongruent results. For example, compare the use of the same provoking words by a 130-pound E-l and a 200-pound E-6 special operator. The tendency for. a breach of the peace might be considerably different depending on which role these individuals played. Do we really want to suggest that because the 130-pound E-l might be considerably less likely to try to retaliate against the special operator than vice versa that the same words spoken in similar situations should lead to a different outcome? I do not. Under either case, the provoking words have a tendency to affect the military mission and the individuals’ service to that mission.
In Thompson, the Court cited the leading Supreme Court case of Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), for the proposition that Article 117 did not violate an accused’s right to free speech. 22 C.M.A. at 90, 46 C.M.R. at 90. Strangely, it did not consider the rest of the Supreme Court’s analysis of the state statute, which was very similar to Article 117. Chaplinsky was distributing literature *218 on the streets “denouncing all religion as ‘a racket.’” Chaplinsky, 315 U.S. at 570, 62 S.Ct. 766. A town marshal told citizens who complained that Chaplinsky was within his rights but “warned Chaplinsky that the crowd was getting restless.” Id. Later, a disturbance broke out and a police officer tried to escort Chaplinsky to the police station. Id. When they encountered the town marshal, he repeated his warning to Chaplin-sky, who responded by saying, “ “You are a God damned racketeer’ and a ‘damned Fascist and the whole government of Rochester are Fascists or agents of Fascists.’ ”[2] Id. at 569-70, 62 S.Ct. 766.
The Supreme Court did not suggest that the appropriate standard for conviction was whether a reasonable government official was likely to breach the peace because of the epithets. Nor did it look to the training or experience of the town marshal to whom the words were spoken. Instead it determined “that the appellations ‘damn racketeer’ and ‘damn Fascist’ are epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace.” Id. at 574, 62 S.Ct. 766 (emphasis added).
Thus, I conclude that in determining whether an appellant was guilty of using provoking words, we should consider the situation in which the words were used rather than the particular characteristics of the person to whom the words were addressed, such as military occupational specialty, size, training, rank, or experience. Instead, the focus should be on whether, in the situation, the words or gestures had a tendency to provoke an average military member to breach the peace, whether by assault or causing a disturbance.

. This Court appears to equate the term "breach of the peace” with assaults or fighting. The term *217 is broader; it refers to "disturbance of the public tranquility, or their tendency to cause such a disturbance." Rollin M. Perkins & Ronald N. Boyce, Criminal Law 477 (3d ed. 1982); see Manual for Courts-Martial, United States (MCM) pt. IV, 141.c.(2) (2012 ed.) ("Loud speech and unruly conduct may also .constitute a breach of the peace by the speaker. A speaker may also by [sic] guilty of causing a breach of the peace if the speaker uses language which can reasonably be expected to produce a violent or turbulent response and a breach of the peace results.”).

. While today such words may not be viewed as especially provoking, Chaplinsky uttered the words while the United States was at war with Fascist Italy and Germany.